Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

*Attorney for Defendant Crunchyroll, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO CABONIOS, J.T., a minor, by and through her parent and guardian *ad litem* OSKAR TORUNO, ANTHONY GONZALES, MATTHEW NEWTON, and ALICIA TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CRUNCHYROLL, LLC, a Delaware Corporation,<br><br>Defendant. | Case No. 2:26-cv-02373-JLS-MARx<br><br>**DEFENDANT CRUNCHYROLL, LLC'S NOTICE OF MOTION AND ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declaration of Samir Ahmed; Declaration of Oliver M. Kiefer; Request for Judicial Notice; Local Rule 7-3 Declaration; and [Proposed] Order]*<br><br>Date: July 24, 2026<br>Time: 10:30 a.m.<br>Courtroom: 8A, 8th Floor<br><br>Assigned to:  Judge Josephine L. Staton<br>Referred to:  Magistrate Judge Margo A. Rocconi |

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

**PLEASE TAKE NOTICE** that, on July 24, 2026 at 10:30 a.m. or as soon thereafter as this matter may be heard before the Honorable Josephine L. Staton in Courtroom 8A in the United States District Court for the Central District of California, Western Division, First Street United States Courthouse, 350 W. First Street, Courtroom 8A, Los Angeles, CA 90012, Defendant Crunchyroll, LLC ("Crunchyroll") will and hereby does respectfully move under 28 U.S.C. § 1404(a) to transfer this case to the United States District Court for the Southern District of New York, should the Court deny Crunchyroll's concurrently filed Motion to Compel Arbitration and Stay Further Proceedings.  When Plaintiffs assented to Crunchyroll's operative Terms of Service, they agreed to a mandatory forum-selection clause designating courts in New York, New York as the exclusive venue for claims not brought in arbitration that relate to the Terms of Service, like Plaintiffs' claim here. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 19, 2026.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Samir Ahmed and exhibits thereto, the Declaration of Oliver M. Kiefer and exhibits thereto, Crunchyroll's Request for Judicial Notice, the pleadings on file in this matter, the oral arguments of counsel and other matters properly considered by the Court at the hearing on the motion, and all matters of which this Court may take judicial notice.

Dated: May 29, 2026

**ZWILLGEN LAW LLP**

By: /s/ *Oliver M. Kiefer*
Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

*Attorney for Defendant Crunchyroll, LLC*

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ..................................................................................................1

I.    Crunchyroll and Its TOS. ......................................................................1

II.   All Plaintiffs Agreed to the January 2025 TOS, and J.T. Agreed
to the February 2026 TOS. ....................................................................2

A.    Francisco Cabonios .......................................................................2

B.    J.T. .................................................................................................3

C.    Anthony Gonzales .........................................................................4

D.    Matthew Newton ...........................................................................5

E.    Alicia Taylor .................................................................................5

III.  Plaintiffs' Allegations ..........................................................................6

ARGUMENT .......................................................................................................6

I.    This Case Should Be Transferred to The Southern District of
New York. ..............................................................................................6

A.    Legal Standard ..............................................................................6

B.    Plaintiffs Assented to the Operative TOS and FSC Within
Them. .............................................................................................7

1.    Plaintiff Cabonios Assented to the January 2025
TOS Upon Account Creation. ............................................9

2.    The Other Plaintiffs Assented to the January 2025
TOS Both By Using Their Accounts After
Receiving Notice of the TOS Update and Clicking
to Confirm Their Agreement. ..........................................11

3.    Plaintiff J.T. Assented to the February 2026 TOS. ...........15

C.    The FSC in the Operative TOS Is Valid and Enforceable...........16

D.    The FSC is Mandatory and Encompasses Plaintiffs'
Claims. ........................................................................................18

E.    Plaintiffs Lack Viable Defenses to Enforcement..........................19

F.    The Public Interest Factors Favor Transfer. ...............................20

CONCLUSION.................................................................................................21

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A to A Props., LLC v. CMJ Recovery Ctr. NV, LLC,*
    2025 WL 2612720 (C.D. Cal. Aug. 22, 2025) ............................................... 16, 19

*Afriyie v. NBCUniversal Media, LLC,*
    775 F. Supp. 3d 791 (S.D.N.Y. 2025) .................................................................. 21

*Atl. Marine Constr. Co. v. U.S. Dist. Court,*
    571 U.S. 49 (2013) .............................................................................................. *passim*

*Bender v. Twilio Inc.,*
    2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) ...................................................... 14

*Berman v. Freedom Fin. Network, LLC,*
    30 F.4th 849 (9th Cir. 2022) ............................................................................. 8, 10

*Crown Cap. Sec., L.P. v. Liberty Surplus Ins. Corp.,*
    2015 WL 12748815 (C.D. Cal. Mar. 30, 2015) (Staton, J.) .............................. 21

*Docksider, Ltd. v. Sea Tech., Ltd.,*
    875 F.2d 762 (9th Cir. 1989) ............................................................................... 18

*Doe 1 v. AOL LLC,*
    552 F.3d 1077 (9th Cir. 2009) ............................................................................. 16

*Future Foam, Inc. v. FXI, Inc.,*
    2016 WL 11752908 (C.D. Cal. Apr. 5, 2016) (Staton, J.) ................. 7, 16, 17, 18

*Garcia v. Roblox Corp.,*
    2026 WL 413636 (C.D. Cal. Feb. 11, 2026) ....................................................... 14

*Hirsch v. Credit9, LLC,*
    2025 WL 3155936 (C.D. Cal. Oct. 2, 2025) ....................................................... 10

*Hong v. StubHub, Inc.,*
    2024 WL 4720924 (C.D. Cal. Sept. 9, 2024) ...................................................... 14

*In re Facebook Biometric Info. Priv. Litig.,*
    185 F. Supp. 3d 1155 (N.D. Cal. 2016)................................................................ 13

*Ireland-Gordy v. Tile, Inc.,*
    2026 WL 594859 (9th Cir. Mar. 3, 2026) ..................................................*passim*

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) ........................................................................9

*Kelter v. Forrest*,
    2008 WL 11338779 (C.D. Cal. Jan. 8, 2008) ....................................................7

*LaCross v. Knight Transp., Inc.*,
    95 F. Supp. 3d 1199 (C.D. Cal. 2015) ......................................................17, 18

*Lee v. DoNotPay, Inc.*,
    683 F. Supp. 3d 1062 (C.D. Cal. 2023) ....................................................10, 15

*Lewis v. Liberty Mut. Ins. Co.*,
    953 F.3d 1160 (9th Cir. 2020) ..................................................................17, 18

*Lewis v. Samsung Elecs. Am., Inc.*,
    2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023) ..............................................9, 15

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ...........................................................................................18

*Massel v. Successfulmatch.com*,
    2025 WL 2452371 (9th Cir. Aug. 26, 2025) ......................................................9

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................................8

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ........................................................................17

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
    69 F.3d 1034 (9th Cir. 1995) ..........................................................................19

*Nail v. Lens.com, Inc.*,
    2024 WL 3723912 (C.D. Cal. June 20, 2024) ..............................................7, 14

*Newport Brain Rsch. Lab'y, Inc. v. Murphy*,
    2019 WL 4456001 (C.D. Cal. May 9, 2019) (Staton, J.) ..................................17

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ....................................................................10, 11

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ....................................................................11, 15

iv

*Plumleigh v. Metro. Fine Arts & Antiques Inc.*,
  2015 WL 13918387 (C.D. Cal. Jan. 21, 2015) (Staton, J.) ................................. 18

*Rapp v. Henkel of Am., Inc.*,
  2018 WL 6307904 (C.D. Cal. Oct. 3, 2018) (Staton, J.) .................................... 21

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021) ........................................................................ 13

*Simonoff v. Expedia, Inc.*,
  643 F.3d 1202 (9th Cir. 2011) ......................................................................... 7

*Solomon v. Flipps Media, Inc.*,
  136 F.4th 41 (2d Cir. 2025) ......................................................................... 21

*Truinject Corp. v. Nestle Skin Health, S.A.*,
  2019 WL 1449641 (C.D. Cal. Mar. 28, 2019) (Staton, J.) ...................... 7, 20, 21

*Webber v. Uber Techs., Inc*,
  2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ................................................ 13

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ................................................................. 17, 19

**Statutes**

28 U.S.C. § 1331 ............................................................................................. 20, 21

28 U.S.C. § 1391 ................................................................................................. 20

28 U.S.C. § 1404(a) ...................................................................................... 1, 6, 20

Video Privacy Protection Act, 18 U.S.C. § 2710 ..................................... 1, 6, 19, 21

**Other Authorities**

Attorney Directory, N.Y. Unified Court System,
  https://iapps.courts.state.ny.us/attorneyservices/search?1 ................................. 18

U.S. Courts, https://www.uscourts.gov/data-news/data-
  tables/2025/12/31/federal-court-management-statistics/n-a-1 ........................... 20

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Crunchyroll has moved to compel Plaintiffs to arbitrate their claims based on Plaintiffs' agreement to Crunchyroll's Terms of Service ("TOS"). Most recently, all Plaintiffs accepted the Crunchyroll TOS updated in January 2025 (the "January 2025 TOS"). One Plaintiff also accepted the Crunchyroll TOS updated in February 2026 (the "February 2026 TOS" and, with the January 2025 TOS, the "Operative TOS").

If this Court denies Crunchyroll's motion to compel arbitration, it should transfer this case to the United States District Court for the Southern District of New York under the mandatory forum-selection clause ("FSC") in the Operative TOS. *See* 28 U.S.C. § 1404(a); *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 52 (2013). The FSC designates courts in New York, New York as the exclusive venue for disputes not brought in arbitration that relate to the Operative TOS. Plaintiffs' sole claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") relates to the Operative TOS among other reasons because it exists only by virtue of Plaintiffs' relationship with Crunchyroll, which the Operative TOS govern. Plaintiffs cannot identify a basis to set aside the FSC, nor is this a "rare" case in which public interest factors defeat transfer.

The Court should transfer this case to the Southern District of New York.

## BACKGROUND

### I.    Crunchyroll and Its TOS.

Crunchyroll is a direct-to-consumer provider of anime (Japanese animation film and television content). Decl. of Samir Ahmed ("Ahmed Decl.") ¶ 5. Crunchyroll offers a video streaming service through its website and mobile application (the "Crunchyroll App"). *Id.* Crunchyroll video content can also be streamed through the Crunchyroll Roku TV application on Roku devices. *Id.* To create a Crunchyroll account and access Crunchyroll's streaming service, users must provide their email address and agree to Crunchyroll's TOS. *Id.* ¶ 6; Compl. ¶ 20.

At all relevant times, Crunchyroll's TOS governed use of Crunchyroll's services, including the Crunchyroll App.  The TOS in effect before the January 2025 TOS update advised users that "[y]ou consent to the use of [] electronic means to complete these Terms of Use and to deliver any notices pursuant to these Terms of Use."  Decl. of Oliver M. Kiefer ("Kiefer Decl."), Ex. 2 § 17; *id.* Ex. 3 § 17 (same in January 2025 TOS).  And they made clear that "[a]ny notice or other communication to be given hereunder will be in writing" and, when given by Crunchyroll, "via email (in each case to the address that you provide)" or by "a posting on the Site."  Kiefer Decl., Ex. 2 § 17; *id.* Ex. 3 § 17 (same in January 2025 TOS).

**II.    All Plaintiffs Agreed to the January 2025 TOS, and J.T. Agreed to the February 2026 TOS.**

All Plaintiffs concede they created Crunchyroll accounts and watched videos on the Crunchyroll App while logged into the App.  Compl. ¶¶ 6-10.  At Crunchyroll's request, Plaintiffs' counsel shared with Crunchyroll's counsel the email addresses Plaintiffs used to create their Crunchyroll accounts.  Ahmed Decl. ¶ 13.  The information about Plaintiffs below is based on Crunchyroll's investigation into those email addresses.  In short, all Plaintiffs assented to the January 2025 TOS, and Plaintiff J.T. additionally assented to the February 2026 TOS.

A.    <u>Francisco Cabonios</u>

Plaintiffs' counsel identified three email addresses Plaintiff Cabonios used or may have used to create Crunchyroll accounts.  Only one is relevant.  Crunchyroll's records show that the accounts created with the other two addresses were not logged into after August 2023 and that no videos were watched through either account.  Ahmed Decl. ¶ 15.

On April 25, 2025, Mr. Cabonios created a Crunchyroll account using the email address ******na1@yahoo.com.  *Id.* ¶ 16.  When doing so, he encountered the screen shown in Exhibit B to the Ahmed Declaration.  The phrase "Terms of Use" was in orange font, underlined, and hyperlinked to a webpage displaying the January 2025

2

TOS. *See* Ahmed Decl., Ex. B; *id.* ¶ 18. After entering an email address and password, Mr. Cabonios would not have been able to proceed further without clicking the "CREATE ACCOUNT" button, which he did on April 25, 2025. *Id.* ¶ 17.

Mr. Cabonios last watched a video on Crunchyroll on June 12, 2025 and has watched approximately 44 hours of video content on Crunchyroll. *Id.* ¶ 20.

### B.   J.T.

On July 17, 2020, Plaintiff J.T.'s Crunchyroll account was created using the email address, ********uno@yahoo.com, which, according to Plaintiffs' counsel, belongs to her father. *Id.* ¶ 21. The individual creating that account accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6. Effective May 28, 2023, J.T. became a paying subscriber of Crunchyroll through her Roku device, which would have required her to again accept Crunchyroll's then-operative TOS. *Id.* ¶ 22. Compl. ¶ 7.

On February 7, 2025, J.T. received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration. Ahmed Decl. ¶ 23. The email, whose subject was "Update to our Terms of Use," notified J.T. of the January 2025 TOS update and was sent to the email address associated with J.T.'s account. *Id.* The phrase "Terms of Use" in Exhibit C hyperlinked to a webpage displaying the January 2025 TOS. *Id.* ¶ 24.

On March 7, 2025, J.T. encountered the screen shown in Exhibit D to the Ahmed Declaration after opening the Crunchyroll Roku TV application on her Roku device. The web address https://www.crunchyroll.com/roku-tos in Exhibit D led to a webpage displaying the January 2025 TOS. *Id.* ¶ 26. J.T. would not have been able to proceed past the screen in Exhibit D without clicking "Continue" and, on March 7, 2025, clicked "Continue." *Id.* ¶ 27.

On February 2, 2026, J.T. received from Crunchyroll the email shown in Exhibit E to the Ahmed Declaration at the email address associated with her account. *Id.* ¶ 28. The email's subject line was "Update on Pricing and Terms of Service" and

notified her of the February 2026 TOS update. *Id.* The phrase "Terms of Service" in Exhibit E hyperlinked to a webpage displaying the February 2026 TOS. *Id.* ¶ 29.

On April 10, 2026, J.T. encountered the screen shown in Exhibit F to the Ahmed Declaration after opening the Crunchyroll Roku TV application on her Roku device. The web address https://www.crunchyroll.com/roku-tos in Exhibit F led to a webpage displaying the February 2026 TOS. *Id.* ¶ 31. J.T. would not have been able to proceed past the screen in Exhibit F without clicking "Continue" and, on April 10, 2026, clicked "Continue." *Id.* ¶ 32.

J.T. last watched a video on Crunchyroll on May 26, 2026 and, from March 7, 2025 onwards, watched approximately 54 hours of Crunchyroll video content; since October 2023, J.T. has watched approximately 118 hours of Crunchyroll video content. *Id.* ¶ 33.

C.    Anthony Gonzales

On February 4, 2017, Plaintiff Gonzales created a Crunchyroll account using the email address, ************s96@gmail.com. *Id.* ¶ 35. When creating his account, Mr. Gonzales accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6.

On February 5, 2025, Mr. Gonzales received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration, discussed *supra*, at the email address associated with his account. *Id.* ¶ 37.

On March 22, 2025, Mr. Gonzales opened the Crunchyroll App on his iOS device and was shown the beige pop-up advisal in Exhibit G to the Ahmed Declaration. *Id.* ¶ 38. The underlined phrase "Terms of Use" in the advisal hyperlinked to a webpage displaying the January 2025 TOS. *Id.* ¶ 39. Mr. Gonzales would not have been able to proceed past the advisal shown in Exhibit G to watch Crunchyroll videos without clicking the "Continue" button within it and, on March 22, 2025, clicked that button. *Id.* ¶ 40.

Mr. Gonzales last watched a video on Crunchyroll on September 26, 2025 and, between March 7, 2025 and March 8, 2026, watched approximately 6.8 hours of

4

Crunchyroll video content; since October 2023, Mr. Gonzales has watched approximately 16.1 hours of Crunchyroll video content. *Id.* ¶ 41.

### D.  Matthew Newton

On March 10, 2022, Plaintiff Newton created a Crunchyroll account using the email address **********2nd@gmail.com. *Id.* ¶ 43.  When creating his account, Mr. Newton accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6.

On February 2, 2025, Mr. Newton received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration, discussed *supra*, at the email address associated with his account. *Id.* ¶ 45.

On April 12, 2025, Mr. Newton opened the Crunchyroll App on his iOS device and was shown the beige pop-up advisal shown in Exhibit G to the Ahmed Declaration, discussed *supra*. *Id.* ¶ 46.  On April 12, 2025, Mr. Newton clicked the "Continue" button shown in Exhibit G. *Id.*

Mr. Newton last watched a video on Crunchyroll on August 4, 2025 and, between March 7, 2025 and that date, watched approximately 37.5 hours of Crunchyroll video content. *Id.* ¶ 47.

### E.  Alicia Taylor

On August 31, 2024, Plaintiff Taylor created a Crunchyroll account using the email address *********738@gmail.com.  Ahmed Decl. ¶ 49.  When creating her account, Ms. Taylor accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6.  On September 7, 2024, Ms. Taylor became a paying subscriber of Crunchyroll, which would have required her to again accept Crunchyroll's then-operative TOS. *Id.* ¶ 50.

On February 5, 2025, Ms. Taylor received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration, described *supra*, at the email address associated with her account. *Id.* ¶ 51.

On March 7, 2025, Ms. Taylor encountered the screen shown in Exhibit D to the Ahmed Declaration, described *supra*, after opening the Crunchyroll Roku TV

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

application on her Roku device.  On March 7, 2025, Ms. Taylor clicked the "Continue" button shown in Exhibit D.  *Id.* ¶ 53.

Ms. Taylor last watched a video on Crunchyroll on May 7, 2025 and, between March 7, 2025 and that date, watched approximately 287 hours of Crunchyroll video content.  *Id.* ¶ 54.

### III.   Plaintiffs' Allegations

Plaintiffs assert one claim against Crunchyroll under the VPPA.  Compl. ¶¶ 52-62.  Plaintiffs allege Crunchyroll integrated a software development kit offered by Braze Inc. ("Braze") into the Crunchyroll App and disclosed Plaintiffs' alleged personally identifiable information to Braze without obtaining adequate consent under the VPPA.  *Id.* ¶¶ 27, 31-32, 39, 41.[1]

### ARGUMENT

### I.   This Case Should Be Transferred to The Southern District of New York.

This case should be transferred to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a) and the mandatory FSC in the Operative TOS.

#### A.   Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  A "forum-selection clause may be enforced by a motion to transfer under § 1404(a)."  *Atl. Marine*, 571 U.S. at 52 (citation

---

[1] Crunchyroll discusses Plaintiffs' allegations further in its concurrently filed alternative motion to dismiss Plaintiffs' complaint.  Crunchyroll submits that, as a matter of judicial efficiency and comity, this Court should reach Crunchyroll's motion to dismiss only if it denies both Crunchyroll's (i) motion to compel arbitration and stay further proceedings ("MTCA") and (ii) alternative motion to transfer ("MTT").  Crunchyroll requested that, for efficiency, Plaintiffs agree to defer any motion-to-dismiss briefing pending resolution of Crunchyroll's MTCA and MTT, but Plaintiffs refused.

6

omitted).  A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63 (cleaned up) (citation omitted).

An FSC is enforceable if (1) it is contained in a valid contract, (2) it encompasses the plaintiff's claims, and (3) certain defenses to enforcement do not apply. *See Truinject Corp. v. Nestle Skin Health, S.A.*, 2019 WL 1449641, at *4 (C.D. Cal. Mar. 28, 2019) (Staton, J.) (citation omitted).[2]  When confronted with a valid FSC, a court must give the plaintiff's choice of forum "no weight" and consider "public-interest factors only." *Atl. Marine*, 571 U.S. at 63-64.  "Courts may 'consider facts outside of the pleadings' when deciding whether to enforce a forum selection clause." *Future Foam, Inc. v. FXI, Inc.*, 2016 WL 11752908, at *3 (C.D. Cal. Apr. 5, 2016) (Staton, J.) (citation omitted).

> B.    Plaintiffs Assented to the Operative TOS and FSC Within Them.

Plaintiffs assented to the Operative TOS and the mandatory FSC within them. *See Nail v. Lens.com, Inc.*, 2024 WL 3723912, at *3 (C.D. Cal. June 20, 2024) (plaintiffs agreed to terms of service containing FSC).

The January 2025 TOS contain the following FSC:

> Subject to the Dispute Resolution: Arbitration Agreement and Class Action Waiver section below, other than small claims actions as permitted therein, any action or proceeding arising from, relating to or in connection with these Terms that is not brought in arbitration will be brought exclusively in the federal or state courts located in New York, New York, and you irrevocably consent to the personal jurisdiction of such courts and agree that it is a convenient forum and that you will not

---

[2] Federal law governs the validity, enforcement, and interpretation of a forum selection clause, whether subject matter jurisdiction rests on federal question or diversity jurisdiction. *See Kelter v. Forrest*, 2008 WL 11338779, at *1 (C.D. Cal. Jan. 8, 2008); *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011).

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

seek to transfer such action or proceeding to any other forum or jurisdiction, under the doctrine of forum non conveniens or otherwise.

Kiefer Decl., Ex. 3 § 13.

The February 2026 TOS contain a materially identical FSC:

Except for disputes subject to mandatory arbitration, the exclusive jurisdiction and venue for any legal action relating to these Terms shall be the state and federal courts located in New York County, New York, USA and you hereby consent to the personal jurisdiction and venue of such courts and waive any objection based on inconvenient forum.

Ahmed Decl., Ex. A § 19.

Whether under New York or California law, Plaintiffs assented to the Operative TOS.  This Court need not resolve which jurisdiction's law governs the contract-formation question because "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

"To form a contract under New York or California law, the parties must manifest their mutual assent to the terms of the agreement." *Id.*  A party can manifest assent through conduct so long as he "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *2 (9th Cir. Mar. 3, 2026) (quoting *Berman*, 30 F.4th at 855).  Courts can find assent on an inquiry notice theory if the app or website provides "reasonably conspicuous notice of the terms to which the consumer will be bound" and the consumer "takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *3 (citation omitted).

The test for inquiry notice involving web-based contracts under California law is whether, "viewed cumulatively," (i) the "context of the transaction," (ii) the "app

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

or website's design and content"; and (iii) "other notices given to users" would have led "a reasonably prudent user" to read the provider's terms of service. *Id.* (citations omitted). *See also Lewis v. Samsung Elecs. Am., Inc.*, 2023 WL 7623670, at *6 (S.D.N.Y. Nov. 14, 2023) (considering similar factors under New York law). The analysis "is informed by the totality of the circumstances." *Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025) (citation omitted).

The test for unambiguous assent is whether "outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Ireland-Gordy*, 2026 WL 594859, at *4 (citation omitted). Under those standards, all Plaintiffs assented to the January 2025 TOS, and Plaintiff J.T. assented to the February 2026 TOS.

> 1. *Plaintiff Cabonios Assented to the January 2025 TOS Upon Account Creation.*

Plaintiff Cabonios assented to the January 2025 TOS when he created his Crunchyroll account in April 2025.

The account-creation screen put Mr. Cabonios on notice of Crunchyroll's TOS. Ahmed Decl., Ex. B. The "context of the transaction" supports notice. That Mr. Cabonios was creating an account with Crunchyroll indicates a forward-looking, continuing relationship that a reasonably prudent Internet user would expect to be governed by contractual terms. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1016 (9th Cir. 2024) ("[T]ransactions in which a consumer is signing up for an ongoing account, make[] it reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship.") (cleaned up).

The "design and content" of the account-creation screen support notice too. The screen was uncluttered and concerned only the account-creation process. *See Massel*, 2025 WL 2452371, at *1 ("The account creation screen was not 'crowded'

9

with extraneous visuals, and the requirements to review and agree to the Service Agreement were in 'the natural flow of [the user's] actions'") (alteration in original) (citation omitted). *Contra Berman*, 30 F.4th at 857 (no inquiry notice when various "visual elements draw the user's attention away from the barely readable critical text"). The screen hyperlinked to the January 2025 TOS, and the hyperlink was clearly denoted as such because it was underlined and in a different color (orange) from almost all other text on the screen (white and gray). The TOS hyperlink was also close to other elements on the screen, which were viewable together. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) ("The notices were not buried on the bottom of the webpage or placed outside the action box, but rather were located directly on top of or below each action button."). That the TOS hyperlink was in slightly smaller font than surrounding text does not undermine notice because the hyperlink was "noticeable because of [its] [orange] font." *Hirsch v. Credit9, LLC*, 2025 WL 3155936, at *6 n.10 (C.D. Cal. Oct. 2, 2025). Courts routinely find that materially identical account-creation or sign-in screens establish notice. *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1072 (C.D. Cal. 2023) (collecting cases).

Mr. Cabonios manifested his assent to the January 2025 TOS by clicking the "CREATE ACCOUNT" button shown in Exhibit B. A click can establish unambiguous assent "if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858.

The account-creation screen here did just that. Crunchyroll expressly advised Mr. Cabonios, directly beneath the "CREATE ACCOUNT" button, that "[b]y creating an account you're agreeing to our Terms of Use." Ahmed Decl., Ex. B. Mr. Cabonios then clicked to "CREATE ACCOUNT." *Id.* That is sufficient. In *Oberstein*, for example, the Ninth Circuit held that users unambiguously manifested

10

assent when they clicked to create an account because the notices at issue, like Crunchyroll's here, "explicitly alert[ed] the user that by creating an account . . . and proceeding to the next page, the user 'agrees to our Terms of Use.'"  60 F.4th at 517. *See also, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024).

>    2.    *The Other Plaintiffs Assented to the January 2025 TOS Both By Using Their Accounts After Receiving Notice of the TOS Update and Clicking to Confirm Their Agreement.*

The remaining Plaintiffs assented to the January 2025 TOS in two independent but reinforcing respects: they (i) used Crunchyroll's services after receiving email notice about the January 2025 TOS update and (ii) clicked within advisals in the Crunchyroll interface to confirm their agreement to the January 2025 TOS.

***Assent Through Email Notice and Continued Use***.  In *Ireland-Gordy,* the Ninth Circuit held that, when the defendant emailed the plaintiffs notice of a terms update and plaintiffs continued to use the relevant app afterwards, those circumstances established mutual assent.  2026 WL 594859, at *1-2, *4-5.  *Ireland-Gordy*'s facts and reasoning control here.

Addressing the inquiry notice factors, the Ninth Circuit first found that the context of the transaction supported notice because "each [plaintiff] provided an email address during account registration," "should have expected to receive relevant updates there while the account was active," and the defendant sent the notice to that email address.  *Id.* at *3.

So too here.  As detailed *supra*, Crunchyroll emailed notice of the January 2025 TOS update to the email addresses Plaintiffs used to create their Crunchyroll accounts. Plaintiffs should have expected to receive notices through email not only because they provided an email address when they created their accounts, as in *Ireland-Gordy*, but also because the pre-January 2025 TOS expressly set that expectation by advising Plaintiffs that "[a]ny notice or other communication to be given hereunder will be in

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

writing and given (x) by Crunchyroll via email (in each case to the address that you provide)" or "(y) a posting on the Site." Kiefer Decl., Ex. 2 § 17.

Next, the *Ireland-Gordy* Court explained that the email's "design and content" supported notice because the email was "clear and legible," it linked to the updated terms in "bold, blue text which contrasted against the white background," and "[t]he subject line clearly stated that [the defendant] was updating its Terms." 2026 WL 594859, at *4.

Crunchyroll's email shares those attributes. Ahmed Decl., Ex. C. The email used straightforward language, and its subject line—"Update to our Terms of Use"—advised Plaintiffs that Crunchyroll was updating its TOS. The "Terms of Use" hyperlink within the email was bolded and orange, which "contrasted against the white background" of the email.

In *Ireland-Gordy*, the Ninth Circuit observed that the final inquiry-notice factor cut against notice because the defendant "could have done more to ensure that all its users were on inquiry notice of the Oct. 2023 Terms," including by "interrupt[ing] users' next visit to the Tile App with a clickwrap pop-up notice." 2026 WL 594859, at *4. But even without that, the Court found defendants' email sufficient, even though one plaintiff claimed she never "read any revised or updated Terms." *Id.* at *2.

Here, Crunchyroll's email notice shares all the favorable attributes of the notice in *Ireland-Gordy*. That alone is enough to have notified Plaintiffs of the January 2025 TOS update. And unlike in *Ireland-Gordy*, the third inquiry notice factor *supports* Crunchyroll because Crunchyroll provided notice of the TOS update through a clickwrap pop-up notice that interrupted users' experience, which the Ninth Circuit intimated would have satisfied the third factor. *See infra* pp. 16-19.

In *Ireland-Gordy*, having determined that the defendant's email placed plaintiffs on inquiry notice of the terms update, the Ninth Circuit concluded that plaintiffs unambiguously manifested assent to that update by later opening and

12

continuing to use the app: "Under the objective standard, a reasonable provider would understand that a user on inquiry notice who opens and uses the provider's app thereby assents to the provider's updated terms of service. [Plaintiff's] 'unexpressed intentions or understandings' are irrelevant to this inquiry." 2026 WL 594859, at *4 (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 460 (2021)).

That reasoning controls here. Plaintiffs J.T., Gonzales, Newton, and Taylor used Crunchyroll and watched Crunchyroll videos after receiving Crunchyroll's email notice in early February 2025. Ahmed Decl. ¶¶ 33, 41, 47, 54. Just as in *Ireland-Gordy*, the Crunchyroll notice explicitly advised users of "what, exactly would constitute assent"—namely, "[y]our continued use of Crunchyroll." 2026 WL 594859, at *4 n.6; Ahmed Decl., Ex. C. Accordingly, by using Crunchyroll after receiving the email notice, Plaintiffs assented to the January 2025 TOS. *Accord Webber v. Uber Techs., Inc*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018) (mutual assent established when plaintiff "received an email in November 2016 notifying him that Uber's Terms had been updated, and that continued use of the service would constitute assent to those Terms" and plaintiff "continued to use the App after receipt of that email"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (same when email notice linked to updated terms and Facebook individually notified users of the update on their news feed).

***Assent through clicking on pop-up advisals***: Plaintiffs also assented to the January 2025 TOS through the Crunchyroll interface.

Plaintiffs Gonzales and Newton were shown the pop-up advisal in Exhibit G to the Ahmed Declaration, which provided them reasonably conspicuous notice of the January 2025 TOS. The context surrounding the advisal supports a finding of notice. As accountholders who registered for the service and received email notice of the January 2025 TOS update, Plaintiffs Gonzales and Newton knew that their relationship with Crunchyroll was governed by Crunchyroll's TOS. When they opened the Crunchyroll App on March 22, 2025 and April 12, 2025, respectively, they

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

could not proceed to watch videos in the App unless they clicked the "Continue" button to signify that they agreed to Crunchyroll's updated TOS. Ahmed Decl. ¶¶ 40, 46. As a result, they were required to reaffirm their decision to continue their relationship with Crunchyroll, much like a new user would need to decide to initiate that relationship upon account creation. *Cf. Garcia v. Roblox Corp.*, 2026 WL 413636, at *5 (C.D. Cal. Feb. 11, 2026), *reconsideration denied*, 2026 WL 928621 (C.D. Cal. Apr. 2, 2026) (downloading "Roblox mobile application" signaled plaintiffs' "desire to maintain an ongoing relationship with the platform"). A reasonably prudent Internet user would understand that choice to be accompanied by contractual commitments.

The advisal's design also indisputably establishes notice. The advisal was clearly titled ("We've Updated Our Terms"), it was brief (three sentences), and the phrase "Terms of Use" was underlined, indicating its status as a hyperlink. Ahmed Decl., Ex. G. Although the hyperlinked text was in black font, like the other text in the pop-up, that does not undermine its conspicuousness, given that it stood out against a light beige background, was barely a few lines above the "Continue" button, was directly beneath the advisal's plain-language title, and immediately preceded a request to "review our updated terms." *See Nail*, 2024 WL 3723912, at *4 (finding notice even when "hyperlinks [we]re the same color as the font on the rest of the page"); *Hong v. StubHub, Inc.*, 2024 WL 4720924, at *5 (C.D. Cal. Sept. 9, 2024) (that hyperlinks "were underlined[] provid[ed] stronger notice that they were links").

The notice also advised users that "[b]y continuing, you agree to the updated terms" and presented users with a conspicuous "Continue" button directly beneath the advisal. Both Gonzales and Newton clicked the "Continue" button. That is an archetypal manifestation of assent. *See, e.g.*, *Bender v. Twilio Inc.*, 2025 WL 2308484, at *5 (N.D. Cal. Aug. 11, 2025).

Plaintiffs Taylor and J.T. also assented via advisal. When they opened the Crunchyroll Roku TV application on their Roku device, they were shown the screen

14

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

in Exhibit D to the Ahmed Declaration, which advised them that Crunchyroll had "updated [its] Terms of Use for using Crunchyroll," encouraged them to "review our updated terms at https://www.crunchyroll.com/roku-tos," and advised them that "[b]y continuing, you agree to the updated terms." The transaction's context supports notice for the same reasons it did as to Plaintiffs Gonzales and Newton. (Plaintiffs Taylor and J.T. could not proceed to watch Crunchyroll videos before clicking the "Continue" button shown in Exhibit D. Ahmed Decl. ¶¶ 27, 53.) The advisal's design and content also support notice because the advisal was streamlined, concerned only the TOS update, was presented in easily readable font, and identified the web address where Plaintiffs could review the January 2025 TOS. *See, e.g.*, *Lee*, 683 F. Supp. 3d at 1073-74 (identifying similar notices held sufficient); *cf. Lewis*, 2023 WL 7623670, at *3 (hard copy notice identifying the non-hyperlinked web address at which user could review terms was sufficient). On March 7, 2025, Ms. Taylor and J.T. clicked the bright-orange, all-caps "CONTINUE" button directly below that notice, which independently establishes, or at least reinforces, their assent to the January 2025 TOS. *E.g.*, *Patrick*, 93 F.4th at 477.

In sum: all Plaintiffs assented to the January 2025 TOS update, and four of them did so twice.

### 3.    *Plaintiff J.T. Assented to the February 2026 TOS.*

Plaintiff J.T. assented to the February 2026 TOS in the same way she assented to the January 2025 TOS: by using Crunchyroll after receiving email notice of the February 2026 TOS update and by clicking to acknowledge that update within an advisal in the Crunchyroll interface.[3]

As discussed, on February 2, 2026, Crunchyroll sent J.T. an email at the email address associated with her account, with the subject line "Update on Pricing and Terms of Service." The email notified her that "we've updated and streamlined our

---

[3] This Court can enforce the FSC as to J.T. based on her assent to the January 2025 TOS alone even if it concludes that J.T. did not assent to the February 2026 TOS.

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

Terms of Service to make them easier to read and understand." Ahmed Decl., Ex. E. The email advised her when the updated terms would take effect and that "[b]y continuing to use Crunchyroll, you agree to the updated Terms." *Id.* The email linked to the February 2026 TOS in "bold, blue text which contrasted against the white background." *Ireland-Gordy,* 2026 WL 594859, at *4. Accordingly, the email notifying J.T. of the February 2026 TOS was materially similar to, if not more robust than, the one in *Ireland-Gordy.* Because J.T. continued to use Crunchyroll after receiving the email notice (Ahmed Decl. ¶ 33), she assented to the February 2026 TOS. *Ireland-Gordy*, 2026 WL 594859, at *4.

Separately, on April 10, 2026, when J.T. opened the Crunchyroll Roku TV application on her Roku device, she was shown an identical screen to the one she encountered on Roku when she accepted the January 2025 TOS—this time, notifying her about the February 2026 TOS update. *Compare* Ahmed Decl., Ex. D, *with id.*, Ex. F. On April 10, 2026, J.T. clicked the "CONTINUE" button shown in Exhibit F, which establishes her assent for all the reasons discussed in connection with her assent via Roku to the January 2025 TOS. Ahmed Decl. ¶ 32.

* * * *

Because all Plaintiffs assented to the January 2025 TOS and J.T. assented to the February 2026 TOS, the parties formed a contract containing an FSC.

C.    The FSC in the Operative TOS Is Valid and Enforceable.

The FSC is valid and enforceable. An FSC is "presumptively valid," and the party seeking to avoid it "bears a heavy burden to establish a ground upon which we will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (cleaned up). *See also A to A Props., LLC v. CMJ Recovery Ctr. NV, LLC*, 2025 WL 2612720, at *6 (C.D. Cal. Aug. 22, 2025) ("[T]he validity inquiry overlaps with the three 'exceptional circumstances' relevant to enforceability."). The resisting party must show that the FSC itself—not the contract as a whole—is invalid. *See Future Foam*, 2016 WL 11752908, at *5. To set aside an FSC, the party resisting

16

it must make a "strong showing" that "(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the plaintiff will for all practical purposes be deprived of his day in court." *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020) (cleaned up) (citing *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018)).

Plaintiffs cannot make a "strong showing" on any of those factors.

**No fraud or overreaching**:  The FSC in the Operative TOS is not the product of fraud or overreaching.  To escape an FSC on that ground, a party "must show that the *inclusion of that clause in the contract* was the product of fraud or coercion." *Newport Brain Rsch. Lab'y, Inc. v. Murphy*, 2019 WL 4456001, at *3 (C.D. Cal. May 9, 2019) (Staton, J.) (emphasis in original) (cleaned up).

The Complaint does not (and could not) allege such facts.  The indisputable evidence shows that the FSC is clearly set out in the Operative TOS, and that Crunchyroll notified Plaintiffs of, and invited them to review, the Operative TOS, which included the FSC.  Moreover, any "general claims of unequal bargaining power and non-negotiability" are "insufficient to overcome the strong presumption in favor of enforcing forum selection clauses." *Future Foam*, 2016 WL 11752908, at *6 (cleaned up).  *See also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004) ("[A] differential in power or education on a non-negotiated contract will not vitiate a forum selection clause.").

**No contravention of public policy**: Transfer also would not contravene any California public policy.  Plaintiffs' one claim arises under federal, not California, law, so transfer would not deny Plaintiffs any statutory rights under California law.  That the Operative TOS select New York—not California—law is also irrelevant to this analysis. *See LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1205 (C.D. Cal. 2015) ("[C]ourts in the Ninth Circuit have generally agreed that the choice-of-

17

law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy.") (cleaned up).

**No deprivation of rights**: Plaintiffs likewise cannot show they would be deprived of their day in court if the case were transferred. *See Plumleigh v. Metro. Fine Arts & Antiques Inc.*, 2015 WL 13918387, at \*5 (C.D. Cal. Jan. 21, 2015) (Staton, J.) (requiring "specific evidence" of such a deprivation to overcome an FSC) (citation omitted). Plaintiffs' lead counsel is barred in New York and is currently registered with the New York State Bar, which obviates the need for Plaintiffs to physically appear in New York to litigate this case. *See* Attorney Directory, N.Y. Unified Court System, https://iapps.courts.state.ny.us/attorneyservices/search?1 (search performed for "Robert Abiri") (last visited May 29, 2026); *Plumleigh*, 2015 WL 13918387, at \*5. And even if Plaintiffs would bear some burden from litigating the case in New York (which is far from clear[4]), that does not establish that doing so "will be so gravely difficult and inconvenient" so as to practically deprive Plaintiffs of their day in court. *Lewis*, 953 F.3d at 1169 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)) (acknowledging that requiring a California family to bring their claim in Australia would "impose burdens" but not so as to overcome FSC); *LaCross*, 95 F. Supp. 3d at 1205 ("[A] plaintiff's financial ability to bear the costs and inconvenience of litigation in another state are factors that the Supreme Court in *Atlantic Marine* deemed 'private interests' that the Court may not consider.") (cleaned up).

Plaintiffs cannot establish any basis to set aside the FSC here.

D.    The FSC is Mandatory and Encompasses Plaintiffs' Claims.

The FSC here is "specified with mandatory language," so must be enforced. *Future Foam*, 2016 WL 11752908, at \*5 (quoting *Docksider, Ltd. v. Sea Tech., Ltd.*,

---

[4] *See LaCross*, 95 F. Supp. 3d at 1205 n.3 ("[G]iven the realities of class action litigation, it is unlikely that prosecuting the case will require LaCross to travel to Arizona as frequently as he avers.").

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

875 F.2d 762, 764 (9th Cir. 1989)). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). The FSC here satisfies that requirement because it provides that relevant actions "will be brought **exclusively** in the federal or state courts located in New York, New York." Kiefer Decl., Ex. 3 § 13 (emphasis added); Ahmed Decl., Ex. A § 19 (Feb. 2026 TOS providing that "[e]xcept for disputes subject to mandatory arbitration, the **exclusive** jurisdiction and venue for any legal action relating to these Terms shall be the state and federal courts located in New York County, New York, USA") (emphasis added).

The FSC also encompasses Plaintiffs' claims. It extends to any action or proceeding "relating to" the Crunchyroll TOS. Kiefer Decl., Ex. 3 § 13; Ahmed Decl. Ex. A § 19. Such clauses, "covering disputes 'relating to' a particular agreement," "apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Yei A. Sun*, 901 F.3d at 1086. The "dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id. See also A to A Props.*, 2025 WL 2612720, at *4 (similar and collecting cases).

This action relates to and is in connection with the Operative TOS. Because Plaintiffs' dispute is predicated on their contractual relationship with Crunchyroll, it necessarily relates to the Operative TOS. In addition, Plaintiffs' challenge to Crunchyroll's data-sharing practices relates to Crunchyroll's privacy policy, referenced in the Operative TOS. *See* Kiefer Decl., Ex. 3 § 1; Ahmed Decl. Ex. A, preamble. Accordingly, Plaintiff's VPPA claim has both a "logical" and "causal" connection to the Operative TOS. *Yei A. Sun*, 901 F.3d at 1086.

E.   Plaintiffs Lack Viable Defenses to Enforcement.

As discussed, Plaintiffs cannot establish any of the three defenses to enforcement of an FSC. *See supra* Argument § I.C; *Atl. Marine*, 571 U.S. at 62.

19

F.  The Public Interest Factors Favor Transfer.

Because the FSC is valid, enforceable, and covers Plaintiffs' claims, the only way transfer would not be appropriate is if this were one of the "rare[]" and "unusual cases" in which public interest factors defeat transfer. *Atl. Marine*, 571 U.S. at 64.[5] It is not.

The public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (cleaned up). Plaintiffs "bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. Plaintiffs cannot carry that burden: each factor is neutral or favors transfer.

The court-congestion factor favors transfer. This District is "one of the busiest districts in the nation." *Truinject Corp.*, 2019 WL 1449641, at *6. That remains true today: federal data indicate that the average number of civil filings per judgeship in this District for the 12-month period ending December 31, 2025 was 654 compared to 399 in the Southern District of New York. *See Table N/A—U.S. District Courts– Combined Civil and Criminal Federal Court Management Statistics (Dec. 31, 2025)*, U.S. Courts, https://www.uscourts.gov/data-news/data-tables/2025/12/31/federal-court-management-statistics/n-a-1, pdf pp. 11, 68 (last visited May 29, 2026).

---

[5] Transfer to the Southern District of New York is proper under 28 U.S.C. § 1404(a) because the case could have been brought there. The Southern District would have subject matter jurisdiction under 28 U.S.C. § 1331, just as this Court does, and Crunchyroll consents to personal jurisdiction in New York for purposes of this case. For the latter reason, venue is also appropriate in the Southern District. *See id.* § 1391(b)(1), (c) (venue is proper in "a judicial district in which any defendant resides," and an entity defendant, like Crunchyroll, "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

20

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

The local-controversy factor favors transfer because this is a national controversy: Plaintiffs seek to represent a nationwide class on a single, federal claim. *See* Compl. ¶¶ 46, 58. Plaintiffs may argue the dispute has a local dimension because Plaintiffs reside in California. *See id.* ¶¶ 6-10. But Plaintiffs' "residency and choice of forum" are "private interests" that are accorded "no weight," given the valid FSC. *Rapp v. Henkel of Am., Inc.*, 2018 WL 6307904, at *5 (C.D. Cal. Oct. 3, 2018) (Staton, J.) (quoting *Atl. Marine*, 571 U.S. at 63-64).

Finally, this is not a diversity case involving California state law claims with which this Court and the Ninth Circuit may be arguably more familiar than a federal court in New York. Rather, subject matter jurisdiction exists independently under 28 U.S.C. § 1331 because Plaintiffs' lone claim arises under a federal statute. This District and the Ninth Circuit have no specialized expertise in applying that statute relative to the Southern District of New York and the Second Circuit, which routinely address VPPA claims. *See, e.g.*, *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 885 (2025); *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791 (S.D.N.Y. 2025). *Cf. Truinject Corp.*, 2019 WL 1449641, at *6 (granting transfer motion and concluding the transferee federal court would be equally "at home" with relevant law when plaintiff's "predominant claims arise under federal trademark, trade secret, and patent law"). Even in the unlikely event that state-law issues arise, they will likely be governed by New York law, given the New York choice-of-law provision in the Operative TOS. And if California law issues arise, "federal courts routinely apply the laws of other states, and other federal courts are fully capable of applying California law." *Crown Cap. Sec., L.P. v. Liberty Surplus Ins. Corp.*, 2015 WL 12748815, at *9 (C.D. Cal. Mar. 30, 2015) (Staton, J.).

## <u>CONCLUSION</u>

The Court should transfer this case to the Southern District of New York if it does not grant Crunchyroll's motion to compel arbitration.

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx

Respectfully submitted,

Dated: May 29, 2026

**ZWILLGEN LAW LLP**

By: /s/ *Oliver M. Kiefer*
Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

**ZWILLGEN PLLC**

Sudhir V. Rao (*pro hac vice* forthcoming)
Sudhir.rao@zwillgen.com
183 Madison Avenue, Suite 1601
New York, NY 10016
Telephone: (646) 362-5590

*Attorneys for Defendant Crunchyroll, LLC*

## LOCAL RULE 11-6 VERIFICATION

The undersigned, counsel of record for Defendant Crunchyroll, LLC, certifies that this brief contains 6,945 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 29, 2026

ZWILLGEN LAW LLP

By: /s/ *Oliver M. Kiefer*
Oliver M. Kiefer (SBN 332830)

*Attorney for Defendant Crunchyroll, Inc.*

DEFENDANT CRUNCHYROLL, LLC'S NOM & ALTERNATIVE MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES; CASE NO. 2:26-cv-02373-JLS-MARx