Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

*Attorney for Defendant Crunchyroll, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FRANCISCO CABONIOS, J.T., a minor, by and through her parent and guardian *ad litem* OSKAR TORUNO, ANTHONY GONZALES, MATTHEW NEWTON, ALICIA TAYLOR, and OSCAR CASTANEDA individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CRUNCHYROLL, LLC, a Delaware Corporation,

Defendant.

Case No. 2:26-cv-02373-JLS-MARx

**DEFENDANT CRUNCHYROLL, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed concurrently with Declaration of Samir Ahmed; Declaration of Oliver M. Kiefer; Request for Judicial Notice; Local Rule 7-3 Declaration; and [Proposed] Order]*

Date: October 2, 2026
Time: 10:30 a.m.
Courtroom: 8A, 8th Floor

Assigned to: Judge Josephine L. Staton
Referred to: Magistrate Judge Margo A. Rocconi

**PLEASE TAKE NOTICE** that, on October 2, 2026 at 10:30 a.m. or as soon thereafter as this matter may be heard before the Honorable Josephine L. Staton in Courtroom 8A in the United States District Court for the Central District of California, Western Division, First Street United States Courthouse, 350 W. First Street, Courtroom 8A, Los Angeles, CA 90012, Defendant Crunchyroll, LLC ("Crunchyroll") will and hereby does respectfully move under 9 U.S.C. § 4 to compel arbitration of Plaintiffs Francisco Cabonios, J.T., a minor, by and through her parent and guardian ad litem Oskar Toruno, Anthony Gonzales, Matthew Newton, Alicia Taylor, and Oscar Castaneda's ("Plaintiffs") claim in this action under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and to stay further proceedings under 9 U.S.C. § 3. Plaintiffs agreed to arbitrate their claim against Crunchyroll on an individual basis when they assented to Crunchyroll's Terms of Service. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 19, 2026.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Samir Ahmed and exhibits thereto, the Declaration of Oliver M. Kiefer and exhibits thereto, Crunchyroll's Request for Judicial Notice, the pleadings on file in this matter, the oral arguments of counsel and other matters properly considered by the Court at the hearing on the motion, and all matters of which this Court may take judicial notice.

Dated: July 22, 2026 **ZWILLGEN LAW LLP**

By: /s/ *Oliver M. Kiefer*

Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

*Attorney for Defendant Crunchyroll, LLC*

# TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

BACKGROUND .......... 1

- I. Crunchyroll and Its TOS. .......... 1
- II. Five Plaintiffs Agreed to the January 2025 TOS, and J.T. Agreed to the February 2026 TOS. .......... 2
  - A. Francisco Cabonios .......... 3
  - B. J.T. .......... 3
  - C. Anthony Gonzales .......... 5
  - D. Matthew Newton .......... 5
  - E. Alicia Taylor .......... 6
  - F. Oscar Castaneda .......... 7
- III. Plaintiffs' Allegations .......... 7

ARGUMENT .......... 7

- I. The Court Must Compel Plaintiffs to Arbitrate Their Claims. .......... 7
  - A. Plaintiffs J.T., Gonzales, Newton, and Taylor Assented to the Operative TOS. .......... 8
    - 1. Plaintiff Cabonios Assented to the January 2025 TOS Upon Account Creation. .......... 9
    - 2. Plaintiffs J.T., Gonzales, Newton, and Taylor Assented to the January 2025 TOS Both By Using Their Accounts After Receiving Notice of the TOS Update and Clicking to Confirm Their Agreement. .......... 11
    - 3. Plaintiff J.T. Assented to the February 2026 TOS. .......... 16

4. Plaintiff Castaneda Agreed to the March 2019 TOS through Advisal Notice and Continued Use. ....17

B. The Parties Agreed to Arbitrate Arbitrability and All Other Threshold Issues. ....18

C. The Arbitration Agreement Covers Plaintiffs' Claim. ....20

D. J.T. Cannot Disaffirm the Arbitration Agreement. ....20

II. The Court Must Stay This Case Pending Arbitration. ....22

CONCLUSION ....22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. A. v. Roku, Inc.*,
2026 WL 1349064 (N.D. Cal. May 14, 2026) ..... 22

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
785 F.3d 1320 (9th Cir. 2015) ..... 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ..... 20

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) ..... 15, 18

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..... 8, 10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ..... 7

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ..... 8

*E.A.R.R. v. Roku, Inc.*,
2026 WL 369238 (C.D. Cal. Feb. 6, 2026) ..... 22

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..... 13

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ..... 8

*S.T.G. ex rel. Garcia v. Epic Games, Inc.*,
2025 WL 3539164 (S.D. Cal. Dec. 10, 2025) ..... 21

*S.T.G. ex rel. Garcia v. Epic Games, Inc.*,
752 F. Supp. 3d 1200 (S.D. Cal. 2024) ..... 8, 19

*Garcia v. Roblox Corp.*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) ..... 14, 21

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ..... 18

*Hirsch v. Credit9, LLC*,
2025 WL 3155936 (C.D. Cal. Oct. 2, 2025) .......... 10

*Hong v. StubHub, Inc.*,
2024 WL 4720924 (C.D. Cal. Sept. 9, 2024) .......... 14

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 7

*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026) .......... *passim*

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) .......... 19

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 9

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) .......... 10, 15

*Lewis v. Samsung Elecs. Am., Inc.*,
2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023) .......... 9, 15

*Massel v. Successfulmatch.com*,
2025 WL 2452371 (9th Cir. Aug. 26, 2025) .......... 9

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 18, 19

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) .......... 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 7

*Nail v. Lens.com, Inc.*,
2024 WL 3723912 (C.D. Cal. June 20, 2024) .......... 14

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 10, 11

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 11, 15, 20

*Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*, 2012 WL 12878644 (C.D. Cal. Nov. 2, 2012) .......... 20

*S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614 (N.D. Cal. 2025) .......... 22

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .......... 13

*Smith v. Spizzirri*, 601 U.S. 472 (2024) .......... 22

*I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196 (S.D.N.Y. 2015) .......... 21

*In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021) .......... 19

*Webber v. Uber Techs., Inc*, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) .......... 13

*Ziboukh v. Whaleco, Inc.*, 95 F. Supp. 3d 349 (E.D.N.Y 2025) .......... 20, 21

**Statutes**

9 U.S.C § 1 .......... 7

9 U.S.C. § 3 .......... 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs are Crunchyroll users who have watched videos through Crunchyroll's streaming service for months, if not years. In that time, Plaintiffs have accepted Crunchyroll's Terms of Service ("TOS")—often repeatedly—and the arbitration agreement within them. Five Plaintiffs (Cabonios, J.T., Gonzales, Newton, and Taylor) accepted Crunchyroll's January 2025 TOS update (the "January 2025 TOS"). Plaintiff J.T. also accepted Crunchyroll's February 2026 TOS update (the "February 2026 TOS" and, with the January 2025 TOS, the "Operative TOS"). Plaintiff Castaneda accepted Crunchyroll's March 2019 TOS, which also contain an arbitration agreement.

In accepting the relevant TOS, Plaintiffs agreed to arbitrate any disputes relating to the TOS or Crunchyroll's services. They also delegated to the arbitrator exclusive authority to address all disputes relating to the interpretation, applicability, and enforceability of the TOS and arbitration agreement, including whether a claim is subject to arbitration. By suing Crunchyroll, Plaintiffs flouted those binding commitments.

Because Plaintiffs assented to the relevant TOS under settled contract-formation principles, this Court must compel Plaintiffs to arbitrate their VPPA claim individually, reserve to the arbitrator any remaining challenges to arbitration, and stay this case pending the arbitration.

## BACKGROUND

### I. Crunchyroll and Its TOS.

Crunchyroll is a direct-to-consumer provider of anime (Japanese animation film and television content). Decl. of Samir Ahmed ("Ahmed Decl.") ¶ 5. Crunchyroll offers a video streaming service through its website and mobile application (the "Crunchyroll App"). *Id.* Crunchyroll video content can also be streamed through the Crunchyroll Roku TV application on Roku devices. *Id.* To create a Crunchyroll account and access Crunchyroll's streaming service, users must provide their email

address and agree to Crunchyroll's TOS. *Id.* ¶ 6; First Am. Compl. ¶ 21, ECF No. 29. Crunchyroll offered accountholders both free and paid subscriptions to its streaming service until December 31, 2025, after which it offered only paid subscriptions. Ahmed Decl. ¶ 7; First Am. Compl. ¶ 22.

At all relevant times, Crunchyroll's TOS governed use of Crunchyroll's services, including the Crunchyroll App. Since at least June 2017, Crunchyroll's TOS have included an arbitration agreement and class action waiver; they have also permitted users to opt out of the arbitration agreement, and, from January 2025 onwards, the class action waiver. *See* Ahmed Decl. ¶ 8, Ex. A § 13; Decl. of Oliver M. Kiefer ("Kiefer Decl."), Ex. 1 § 14, Ex. 2 § 14, Ex. 3 § 14.

Since, January 2017, each version of the TOS explained that "[m]odifications to these Terms of Use or any policies will be posted on the Site or made in compliance with any notice requirements set forth in these Terms of Use" and that, "[b]y continuing to use the Site or Services after Crunchyroll has posted any modifications on the Site or provided any required notices, you accept and agree to be bound by the modifications." Kiefer Decl., Ex. 1 § 5; *id.* Ex. 2 § 5; *id.* Ex. 3 § 5; *id.* Ex. 4 § 5. Each version of the TOS also advised users that "[y]ou consent to the use of . . . electronic means to complete these Terms of Use and to deliver any notices pursuant to these Terms of Use." Kiefer Decl., Ex. 1 § 17; *id.* Ex. 2 § 17; *id.* Ex. 3 § 17 (same in January 2025 TOS); *id.* Ex. 4 § 17. And they made clear that "[a]ny notice or other communication to be given hereunder will be in writing" and, when given by Crunchyroll, "via email (in each case to the address that you provide)" ***or*** by "a posting on the Site." Kiefer Decl., Ex. 1 § 17; *id.* Ex. 2 § 17; *id.* Ex. 3 § 17; *id.* Ex. 4 § 17.

## II. Five Plaintiffs Agreed to the January 2025 TOS, and J.T. Agreed to the February 2026 TOS.

All Plaintiffs concede they created Crunchyroll accounts and watched videos on the Crunchyroll App while logged into the App. First Am. Compl. ¶¶ 6-11. The information about Plaintiffs below is based on Crunchyroll's investigation into

Plaintiffs' email addresses provided by their counsel. In short, Plaintiffs Cabonios, J.T., Gonzales, Newton, and Taylor assented to the January 2025 TOS, and Plaintiff J.T. additionally assented to the February 2026 TOS.[1] Plaintiff Castaneda assented to the March 2019 TOS.

A. Francisco Cabonios

On April 25, 2025, Mr. Cabonios created a Crunchyroll account using the email address ******na1@yahoo.com. Ahmed Decl., ¶ 16. When doing so, he encountered the screen shown in Exhibit B to the Ahmed Declaration. The phrase "Terms of Use" was in orange font, underlined, and hyperlinked to a webpage displaying the January 2025 TOS. *See* Ahmed Decl., Ex. B; *id.* ¶ 18. After entering an email address and password, Mr. Cabonios would not have been able to proceed further without clicking the "CREATE ACCOUNT" button, which he did on April 25, 2025. *Id.* ¶ 17.

Mr. Cabonios last watched a video on Crunchyroll on June 12, 2025 and has watched approximately 44 hours of video content on Crunchyroll. *Id.* ¶ 20. Mr. Cabonios did not opt out of the arbitration agreement in any version of Crunchyroll's TOS. *Id.* ¶ 19.

B. J.T.

On July 17, 2020, Plaintiff J.T.'s Crunchyroll account was created using the email address, ********uno@yahoo.com, which, according to Plaintiffs' counsel, belongs to her father. *Id.* ¶ 21. The individual creating that account accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6. Effective May 28, 2023, J.T. became a paying subscriber of Crunchyroll through her Roku device, which would have required her to again accept Crunchyroll's then-operative TOS. *Id.* ¶ 22; First Am. Compl. ¶ 7.

On February 7, 2025, J.T. received from Crunchyroll the email shown in

[1] Most Plaintiffs also assented to earlier versions of the TOS that likewise contained an arbitration agreement. *Id.* ¶ 6. Crunchyroll preserves, and does not waive, all arguments that Plaintiffs agreed to earlier versions of the TOS.

Exhibit C to the Ahmed Declaration. Ahmed Decl. ¶ 23. The email, whose subject was "Update to our Terms of Use," notified J.T. of the January 2025 TOS update and was sent to the email address associated with J.T.'s account. *Id.* The phrase "Terms of Use" in Exhibit C hyperlinked to a webpage displaying the January 2025 TOS. *Id.* ¶ 24.

On March 7, 2025, J.T. encountered the screen shown in Exhibit D to the Ahmed Declaration after opening the Crunchyroll Roku TV application on her Roku device. The web address https://www.crunchyroll.com/roku-tos in Exhibit D led to a webpage displaying the January 2025 TOS. *Id.* ¶ 26. J.T. would not have been able to proceed past the screen in Exhibit D without clicking "Continue" and, on March 7, 2025, clicked "Continue." *Id.* ¶ 27.

On February 2, 2026, J.T. received from Crunchyroll the email shown in Exhibit E to the Ahmed Declaration at the email address associated with her account. *Id.* ¶ 28. The email's subject line was "Update on Pricing and Terms of Service" and notified her of the February 2026 TOS update. *Id.* The phrase "Terms of Service" in Exhibit E hyperlinked to a webpage displaying the February 2026 TOS. *Id.* ¶ 29.

On April 10, 2026, J.T. encountered the screen shown in Exhibit F to the Ahmed Declaration after opening the Crunchyroll Roku TV application on her Roku device. The web address https://www.crunchyroll.com/roku-tos in Exhibit F led to a webpage displaying the February 2026 TOS. *Id.* ¶ 31. J.T. would not have been able to proceed past the screen in Exhibit F without clicking "Continue" and, on April 10, 2026, clicked "Continue." *Id.* ¶ 32.

J.T. last watched a video on Crunchyroll on May 26, 2026, well after filing this Complaint, and, from March 7, 2025 onwards, watched approximately 54 hours of Crunchyroll video content; since October 2023, J.T. has watched approximately 118 hours of Crunchyroll video content. *Id.* ¶ 33.

J.T. did not opt out of the arbitration agreement in any version of Crunchyroll's TOS. *Id.*¶ 34.

C. Anthony Gonzales

On February 4, 2017, Plaintiff Gonzales created a Crunchyroll account using the email address, ************s96@gmail.com. *Id.* ¶ 35. When creating his account, Mr. Gonzales accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6.

On February 5, 2025, Mr. Gonzales received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration, discussed *supra*, at the email address associated with his account. *Id.* ¶ 37.

On March 22, 2025, Mr. Gonzales opened the Crunchyroll App on his iOS device and was shown the beige pop-up advisal in Exhibit G to the Ahmed Declaration. *Id.* ¶ 38. The underlined phrase "Terms of Use" in the advisal hyperlinked to a webpage displaying the January 2025 TOS. *Id.* ¶ 39. Mr. Gonzales would not have been able to proceed past the advisal shown in Exhibit G to watch Crunchyroll videos without clicking the "Continue" button within it and, on March 22, 2025, clicked that button. *Id.* ¶ 40.

Mr. Gonzales last watched a video on Crunchyroll on September 26, 2025 and, between March 7, 2025 and that date, watched approximately 6.8 hours of Crunchyroll video content; since October 2023, Mr. Gonzales has watched approximately 16.1 hours of Crunchyroll video content. *Id.* ¶ 41.

Mr. Gonzales did not opt out of the arbitration agreement in any version of Crunchyroll's TOS. *Id.* ¶ 42.

D. Matthew Newton

On March 10, 2022, Plaintiff Newton created a Crunchyroll account using the email address **********2nd@gmail.com. *Id.* ¶ 43. When creating his account, Mr. Newton accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6.

On February 2, 2025, Mr. Newton received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration, discussed *supra*, at the email address associated with his account. *Id.* ¶ 45.

On April 12, 2025, Mr. Newton opened the Crunchyroll App on his iOS device and was shown the beige pop-up advisal shown in Exhibit G to the Ahmed Declaration, discussed *supra*. *Id.* ¶ 46. On April 12, 2025, Mr. Newton clicked the "Continue" button shown in Exhibit G. *Id.*

Mr. Newton last watched a video on Crunchyroll on August 4, 2025 and, between March 7, 2025 and that date, watched approximately 37.5 hours of Crunchyroll video content. *Id.* ¶ 47.

Mr. Newton did not opt out of the arbitration agreement in any version of Crunchyroll's TOS. *Id.* ¶ 48.

E. Alicia Taylor

On August 31, 2024, Plaintiff Taylor created a Crunchyroll account using the email address *********738@gmail.com. *Id.* ¶ 49. When creating her account, Ms. Taylor accepted Crunchyroll's then-operative TOS. *Id.* ¶ 6. On September 7, 2024, Ms. Taylor became a paying subscriber of Crunchyroll, which would have required her to again accept Crunchyroll's then-operative TOS. *Id.* ¶ 50.

On February 5, 2025, Ms. Taylor received from Crunchyroll the email shown in Exhibit C to the Ahmed Declaration, described *supra*, at the email address associated with her account. *Id.* ¶ 51.

On March 7, 2025, Ms. Taylor encountered the screen shown in Exhibit D to the Ahmed Declaration, described *supra*, after opening the Crunchyroll Roku TV application on her Roku device. On March 7, 2025, Ms. Taylor clicked the "Continue" button shown in Exhibit D. *Id.* ¶ 53.

Ms. Taylor last watched a video on Crunchyroll on May 7, 2025 and, between March 7, 2025 and that date, watched approximately 287 hours of Crunchyroll video content. *Id.* ¶ 54.

Ms. Taylor did not opt out of the arbitration agreement in any version of Crunchyroll's TOS. *Id.* ¶ 55.

F. Oscar Castaneda

On January 12, 2016, Plaintiff Castaneda created a Crunchyroll account using the email address *********ega@gmail.com. *Id.* ¶ 56. When creating his account, Mr. Castaneda encountered the screen shown in Exhibit H of the Ahmed Declaration and accepted Crunchyroll's then-operative TOS. *Id.* ¶ 56. Beginning in January 2020, Crunchyroll displayed the pop-up advisal in Exhibit I to users logging into the App informing users that it had updated its TOS. Mr. Castaneda alleges he used Crunchyroll via the App after the date of that advisal, through September 2024. First Am. Compl. ¶ 11. Mr. Castaneda did not opt out of the arbitration agreement in any version of Crunchyroll's TOS. Ahmed Decl. ¶ 61.

## III. Plaintiffs' Allegations

Plaintiffs assert one claim against Crunchyroll under the VPPA. First Am. Compl. ¶¶ 57-67. Plaintiffs allege Crunchyroll integrated a software development kit offered by Braze Inc. ("Braze") into the Crunchyroll App and disclosed Plaintiffs' alleged personally identifiable information to Braze without obtaining adequate consent under the VPPA. *Id.* ¶¶ 27, 31-32, 39, 41.

# ARGUMENT

## I. The Court Must Compel Plaintiffs to Arbitrate Their Claims.

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration clauses in commercial contracts, like these, that involve interstate commerce. 9 U.S.C § 1. A "liberal federal policy favor[s] arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Under the FAA, a court is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). But a delegation clause within an arbitration agreement limits the Court's review to the first issue, so long as "clear and unmistakable" evidence supports the delegation.

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). So, "if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Id.* at 1030.

A. Plaintiffs J.T., Gonzales, Newton, and Taylor Assented to the Operative TOS.

The party seeking to compel arbitration must show, by a preponderance of evidence, that an agreement to arbitrate exists. *See S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1205 (S.D. Cal. 2024) (citing *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015)). Courts apply state law on contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Whether the Court applies New York or California law does not impact this motion because "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (quotation omitted).

"To form a contract under New York or California law, the parties must manifest their mutual assent to the terms of the agreement." *Id*. A party can manifest assent through conduct so long as he "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *2 (9th Cir. Mar. 3, 2026) (quoting *Berman*, 30 F.4th at 855). Courts can find assent on an inquiry notice theory if the app or website provides "reasonably conspicuous notice of the terms to which the consumer will be bound" and the consumer "takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *3 (citation omitted).

The test for inquiry notice involving web-based contracts under California law is whether, "viewed cumulatively," (i) the "context of the transaction," (ii) the "app or website's design and content"; and (iii) "other notices given to users" would have

led "a reasonably prudent user" to read the provider's terms of service. *Id.* (citations omitted). *See also Lewis v. Samsung Elecs. Am., Inc.*, 2023 WL 7623670, at *6 (S.D.N.Y. Nov. 14, 2023) (considering similar factors under New York law). The analysis "is informed by the totality of the circumstances." *Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025) (citation omitted).

The test for unambiguous assent is whether "outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Ireland-Gordy*, 2026 WL 594859, at *4 (citation omitted). Under those standards, Plaintiffs Cabonios, J.T., Gonzales, Newton, and Taylor assented to the January 2025 TOS, and Plaintiff J.T. also assented to the February 2026 TOS.

*1. Plaintiff Cabonios Assented to the January 2025 TOS Upon Account Creation.*

Plaintiff Cabonios assented to the January 2025 TOS when he created his Crunchyroll account in April 2025.

The account-creation screen put Mr. Cabonios on notice of Crunchyroll's TOS. Ahmed Decl., Ex. B. The "context of the transaction" supports notice. That Mr. Cabonios was creating an account with Crunchyroll indicates a forward-looking, continuing relationship that a reasonably prudent Internet user would expect to be governed by contractual terms. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1016 (9th Cir. 2024) ("[T]ransactions in which a consumer is signing up for an ongoing account, make[] it reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship.") (cleaned up).

The "design and content" of the account-creation screen support notice, too. The screen was uncluttered and concerned only the account-creation process. *See Massel*, 2025 WL 2452371, at *1 ("The account creation screen was not 'crowded' with extraneous visuals, and the requirements to review and agree to the Service

Agreement were in 'the natural flow of [the user's] actions'") (alteration in original) (citation omitted). *Contra Berman*, 30 F.4th at 857 (no inquiry notice when various "visual elements draw the user's attention away from the barely readable critical text"). The screen hyperlinked to the January 2025 TOS, and the hyperlink was clearly denoted as such because it was underlined and in a different color (orange) from almost all other text on the screen (white and gray). The TOS hyperlink was also close to other elements on the screen, which were viewable together. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) ("The notices were not buried on the bottom of the webpage or placed outside the action box, but rather were located directly on top of or below each action button."). That the TOS hyperlink was in slightly smaller font than surrounding text does not undermine notice because the hyperlink was "noticeable because of [its] [orange] font." *Hirsch v. Credit9, LLC*, 2025 WL 3155936, at *6 n.10 (C.D. Cal. Oct. 2, 2025). Courts routinely find that materially identical account-creation or sign-in screens establish notice. *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1072 (C.D. Cal. 2023) (collecting cases).

Mr. Cabonios manifested his assent to the January 2025 TOS by clicking the "CREATE ACCOUNT" button shown in Exhibit B. A click can establish unambiguous assent "if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858.

The account-creation screen here did just that. Crunchyroll expressly advised Mr. Cabonios, directly beneath the "CREATE ACCOUNT" button, that "[b]y creating an account you're agreeing to our Terms of Use." Ahmed Decl., Ex. B. Mr. Cabonios then clicked to "CREATE ACCOUNT." *Id.* ¶ 17. That is sufficient. In *Oberstein*, for example, the Ninth Circuit held that users unambiguously manifested assent when they clicked to create an account because the notices at issue, like

Crunchyroll's here, "explicitly alert[ed] the user that by creating an account . . . and proceeding to the next page, the user 'agrees to our Terms of Use.'" 60 F.4th at 517. *See also, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024).

*2. Plaintiffs J.T., Gonzales, Newton, and Taylor Assented to the January 2025 TOS Both By Using Their Accounts After Receiving Notice of the TOS Update and Clicking to Confirm Their Agreement.*

Plaintiffs J.T., Gonzales, Newton, and Taylor assented to the January 2025 TOS in two independent but reinforcing respects: they (i) used Crunchyroll's services after receiving email notice about the January 2025 TOS update and (ii) clicked within advisals in the Crunchyroll interface to confirm their agreement to the January 2025 TOS.

***Assent Through Email Notice and Continued Use***. In *Ireland-Gordy,* the Ninth Circuit held that, when the defendant emailed the plaintiffs notice of a terms update and plaintiffs continued to use the relevant app afterwards, those circumstances established mutual assent. 2026 WL 594859, at *1-2, *4-5. *Ireland-Gordy*'s facts and reasoning control here.

Addressing the inquiry notice factors, the Ninth Circuit first found that the context of the transaction supported notice because "each [plaintiff] provided an email address during account registration," "should have expected to receive relevant updates there while the account was active," and the defendant sent the notice to that email address. *Id.* at *3.

So too here. As detailed *supra*, Crunchyroll emailed notice of the January 2025 TOS update to the email addresses Plaintiffs J.T., Gonzales, Newton, and Taylor used to create their Crunchyroll accounts. These Plaintiffs should have expected to receive notices through email not only because they provided an email address when they created their accounts, as in *Ireland-Gordy*, but also because the pre-January 2025 TOS expressly set that expectation by advising these Plaintiffs that "[a]ny notice or

other communication to be given hereunder will be in writing and given (x) by Crunchyroll via email (in each case to the address that you provide)" or "(y) a posting on the Site." Kiefer Decl., Ex. 2 § 17.

Next, the *Ireland-Gordy* Court explained that the email's "design and content" supported notice because the email was "clear and legible," it linked to the updated terms in "bold, blue text which contrasted against the white background," and "[t]he subject line clearly stated that [the defendant] was updating its Terms." 2026 WL 594859, at *4.

Crunchyroll's email shares those attributes. Ahmed Decl., Ex. C. The email used straightforward language, and its subject line—"Update to our Terms of Use"—advised Plaintiffs that Crunchyroll was updating its TOS. The "Terms of Use" hyperlink within the email was bolded and orange, which "contrasted against the white background" of the email. And the email specifically flagged that the TOS update would include changes to dispute resolution provisions. *Contra Ireland-Gordy*, 2026 WL 594859, at *4 ("[E]mail did not say specifically that the arbitration agreement would be updated.").

In *Ireland-Gordy*, the Ninth Circuit observed that the final inquiry-notice factor cut against notice because the defendant "could have done more to ensure that all its users were on inquiry notice of the Oct. 2023 Terms," including by "interrupt[ing] users' next visit to the Tile App with a clickwrap pop-up notice." *Id.* But even without that, the Court found defendants' email sufficient, even though one plaintiff claimed she never "read any revised or updated Terms." *Id.* at *2.

Here, Crunchyroll's email notice shares all the favorable attributes of the notice in *Ireland-Gordy*. That alone is enough to have notified Plaintiffs J.T., Gonzales, Newton, and Taylor of the January 2025 TOS update. And unlike in *Ireland-Gordy*, the third inquiry notice factor *supports* Crunchyroll because Crunchyroll provided notice of the TOS update through a clickwrap pop-up notice that interrupted users'

experience, which the Ninth Circuit intimated would have satisfied the third factor. *See infra* pp. 17-20.

In *Ireland-Gordy*, having determined that the defendant's email placed plaintiffs on inquiry notice of the terms update, the Ninth Circuit concluded that plaintiffs unambiguously manifested assent to that update by later opening and continuing to use the app: "Under the objective standard, a reasonable provider would understand that a user on inquiry notice who opens and uses the provider's app thereby assents to the provider's updated terms of service. [Plaintiff's] 'unexpressed intentions or understandings' are irrelevant to this inquiry." 2026 WL 594859, at *4 (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 460 (2021)).

That reasoning controls here. Plaintiffs J.T., Gonzales, Newton, and Taylor used Crunchyroll and watched Crunchyroll videos after receiving Crunchyroll's email notice in early February 2025. Ahmed Decl. ¶¶ 33, 41, 47, 54. Just as in *Ireland-Gordy*, the Crunchyroll notice explicitly advised users of "what, exactly would constitute assent"—namely, "[y]our continued use of Crunchyroll." 2026 WL 594859, at *4 n.6; Ahmed Decl., Ex. C. As noted, no Plaintiff exercised their right to opt out of the arbitration agreement. Accordingly, by using Crunchyroll after receiving the email notice, Plaintiffs assented to the January 2025 TOS. *Accord Webber v. Uber Techs., Inc*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018) (mutual assent established when plaintiff "received an email in November 2016 notifying him that Uber's Terms had been updated, and that continued use of the service would constitute assent to those Terms" and plaintiff "continued to use the App after receipt of that email"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (same when email notice linked to updated terms and Facebook individually notified users of the update on their news feed).

***Assent through clicking on pop-up advisals***: Plaintiffs J.T., Gonzales, Newton, and Taylor also assented to the January 2025 TOS through the Crunchyroll interface.

Plaintiffs Gonzales and Newton were shown the pop-up advisal in Exhibit G to the Ahmed Declaration, which provided them reasonably conspicuous notice of the January 2025 TOS. The context surrounding the advisal supports a finding of notice. As accountholders who registered for the service and received email notice of the January 2025 TOS update, Plaintiffs Gonzales and Newton knew that their relationship with Crunchyroll was governed by Crunchyroll's TOS. When they opened the Crunchyroll App on March 22, 2025 and April 12, 2025, respectively, they could not proceed to watch videos in the App unless they clicked the "Continue" button to signify that they agreed to Crunchyroll's updated TOS. Ahmed Decl. ¶¶ 40, 46. As a result, they were required to reaffirm their decision to continue their relationship with Crunchyroll, much like a new user would need to decide to initiate that relationship upon account creation. *Cf. Garcia v. Roblox Corp.*, 2026 WL 413636, at *5 (C.D. Cal. Feb. 11, 2026), *reconsideration denied*, 2026 WL 928621 (C.D. Cal. Apr. 2, 2026) (downloading "Roblox mobile application" signaled plaintiffs' "desire to maintain an ongoing relationship with the platform"). A reasonably prudent Internet user would understand that choice to be accompanied by contractual commitments.

The advisal's design indisputably establishes notice. The advisal was clearly titled ("We've Updated Our Terms"), it was brief (three sentences), and the phrase "Terms of Use" was underlined, indicating its status as a hyperlink. Ahmed Decl., Ex. G. Although the hyperlinked text was in black font, like the other text in the pop-up, that does not undermine its conspicuousness, given that it stood out against a light beige background, was barely a few lines above the "Continue" button, was directly beneath the advisal's plain-language title, and immediately preceded a request to "review our updated terms." *See Nail v. Lens.com, Inc.*, 2024 WL 3723912, at *4 (C.D. Cal. June 20, 2024) (finding notice even when "hyperlinks [we]re the same color as the font on the rest of the page"); *Hong v. StubHub, Inc.*, 2024 WL 4720924, at *5

(C.D. Cal. Sept. 9, 2024) (that hyperlinks "were underlined[] provid[ed] stronger notice that they were links").

The notice also advised users that "[b]y continuing, you agree to the updated terms" and presented users with a conspicuous "Continue" button directly beneath the advisal. Both Gonzales and Newton clicked the "Continue" button. That is an archetypal manifestation of assent. *See, e.g.*, *Bender v. Twilio Inc.*, 2025 WL 2308484, at *5 (N.D. Cal. Aug. 11, 2025).

Plaintiffs Taylor and J.T. also assented via advisal. When they opened the Crunchyroll Roku TV application on their Roku device, they were shown the screen in Exhibit D to the Ahmed Declaration, which advised them that Crunchyroll had "updated [its] Terms of Use for using Crunchyroll," encouraged them to "review our updated terms at https://www.crunchyroll.com/roku-tos," and advised them that "[b]y continuing, you agree to the updated terms." The transaction's context supports notice for the same reasons it did as to Plaintiffs Gonzales and Newton. (Plaintiffs Taylor and J.T. could not proceed to watch Crunchyroll videos before clicking the "Continue" button shown in Exhibit D. Ahmed Decl. ¶¶ 27, 53.) The advisal's design and content also support notice because the advisal was streamlined, concerned only the TOS update, was presented in easily readable font, and identified the web address where Plaintiffs could review the January 2025 TOS. *See, e.g.*, *Lee*, 683 F. Supp. 3d at 1073-74 (identifying similar notices held sufficient); *cf. Lewis*, 2023 WL 7623670, at *3 (hard copy notice identifying the non-hyperlinked web address at which user could review terms was sufficient). On March 7, 2025, Ms. Taylor and J.T. clicked the bright-orange, all-caps "CONTINUE" button directly below that notice, which independently establishes, or at least reinforces, their assent to the January 2025 TOS. *E.g.*, *Patrick*, 93 F.4th at 477.

* * *

Five Plaintiffs assented to the January 2025 TOS update, and four of them did so twice. Because none exercised his or her right to opt-out of the arbitration

agreement, all are bound by that agreement.

*3. Plaintiff J.T. Assented to the February 2026 TOS.*

Plaintiff J.T. assented to the February 2026 TOS in the same way she assented to the January 2025 TOS: by using Crunchyroll after receiving email notice of the February 2026 TOS update and by clicking to acknowledge that update within an advisal in the Crunchyroll interface.[2]

As discussed, on February 2, 2026, Crunchyroll sent J.T. an email at the email address associated with her account, with the subject line "Update on Pricing and Terms of Service." The email notified her that "we've updated and streamlined our Terms of Service to make them easier to read and understand" and specifically flagged "dispute resolution" as one of the changed provisions. Ahmed Decl., Ex. E. The email advised her when the updated terms would take effect and that "[b]y continuing to use Crunchyroll, you agree to the updated Terms." *Id.* The email linked to the February 2026 TOS in "bold, blue text which contrasted against the white background." *Ireland-Gordy*, 2026 WL 594859, at *4. Accordingly, the email notifying J.T. of the February 2026 TOS was materially similar to, if not more robust than, the one in *Ireland-Gordy*. Because J.T. continued to use Crunchyroll after receiving the email notice (Ahmed Decl. ¶ 33), she assented to the February 2026 TOS. *Ireland-Gordy*, 2026 WL 594859, at *4.

Separately, on April 10, 2026, when J.T. opened the Crunchyroll Roku TV application on her Roku device, she was shown an identical screen to the one she encountered on Roku when she accepted the January 2025 TOS—this time, notifying her about the February 2026 TOS update. *Compare* Ahmed Decl., Ex. D, *with id.*, Ex. F. On April 10, 2026, J.T. clicked the "CONTINUE" button shown in Exhibit F,

[2] The Court can compel J.T.'s claims to arbitration based on J.T.'s assent to the January 2025 TOS alone even if it concludes that J.T. did not assent to the February 2026 TOS.

which establishes her assent for all the reasons discussed in connection with her assent via Roku to the January 2025 TOS. Ahmed Decl. ¶ 32.

### *4. Plaintiff Castaneda Agreed to the March 2019 TOS through Advisal Notice and Continued Use.*

Plaintiffs' Amended Complaint differs in only one key respect from the Complaint: the addition of Plaintiff Castaneda. The Amended Complaint alleges that Plaintiff Castaneda "became a paid Crunchyroll subscriber around 2015, and . . . periodically watched videos while logged into Crunchyroll's app, until September 2024, when he stopped using the app." First Am. Compl. ¶ 11.

Similar to Plaintiff Cabonios, the account-creation screen Plaintiff Castaneda encountered put Mr. Castaneda on notice of Crunchyroll's TOS. Ahmed Decl., Ex. I. For the reasons set forth in Section I.A.1, *supra*, Mr. Castaneda had notice that he was agreeing to the then-operative January 2010 TOS when he created his account on January 12, 2016. Ahmed Decl. ¶ 56. While the January 2010 TOS did not contain an arbitration agreement, the January 2010 TOS provided that (1) Crunchyroll reserved the right to modify the TOS at any time, *see* Kiefer Decl., Ex. 1 § 5, (2) users consented to electronic notice of updates, *see id.* Ex. 1, § 17, and (3) continued use of Crunchyroll after receiving notice constituted agreement to the updated TOS. *See id.* Every version of Crunchyroll's TOS since June 2017 contained an arbitration provision.

And, similar to Plaintiffs J.T., Gonzales, Newton, and Taylor, Mr. Castaneda assented to the March 2019 TOS through the Crunchyroll interface. Beginning in January 2020, Crunchyroll displayed a pop-up advisal to users logging into the App informing users that it had updated its TOS. Ahmed Decl. ¶ 57; *id.* Ex. I. Users could not proceed to watch videos in the App unless they clicked the "Acknowledge" button to signify that they agreed to Crunchyroll's updated TOS. Ahmed Decl. ¶ 59.

Like the 2025 TOS update, the advisal presented in 2020 establishes notice. The advisal was clearly titled ("Terms of Use Updated"), it was brief (two sentences), and the phrase "updated terms" and URL ("crunchyroll.com/tos") were set apart in orange

text, indicating the status as a hyperlink. Ahmed Decl., Ex. I. Users had to click acknowledge to proceed past the advisal and watch videos. And Mr. Castaneda alleges he logged in and watched videos on the app after the date of the advisal— "until September 2024," This establishes assent to the March 2019 TOS containing an agreement to arbitrate. *See, e.g.*, Bender, 2025 WL 2308484, at *5.[3]

B. The Parties Agreed to Arbitrate Arbitrability and All Other Threshold Issues.

When clear and unmistakable evidence shows that parties intended to delegate arbitrability and other gateway issues to the arbitrator, courts must honor the delegation. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). The broad delegation clause in the January 2025 TOS reflects the requisite intent. It provides that:

> [T]he arbitrator, and not any federal, state or local court or agency, shall have **exclusive authority** to resolve **all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Terms of Use and the Arbitration Agreement**, including, but not limited to any claim that all or any part of these Terms of Use or the **Arbitration Agreement are void or voidable**, **whether a claim is subject to arbitration** . . . .

Kiefer Decl., Ex. 3 § 14(b) (emphasis added). *See also* Ahmed Decl., Ex. A § 13.2 (similar).

Courts regularly enforce similar delegation clauses. *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). The delegation clause here is even clearer than those in *Momot*

[3] Mr. Castaneda's further allegations that he submitted notice of his VPPA claim to Crunchyroll on January 15, 2025, only reinforces the fact he established an ongoing relationship with Crunchyroll that continued throughout his use of the platform. *See* Compl. ¶¶ 44-47.

and *Mohamed* in delegating to the arbitrator, not the Court, authority to decide gateway questions: it provides that the arbitrator and "not" any court "shall have **exclusive** authority" to resolve the identified issues. And it facially requires the arbitrator to decide "whether [Plaintiffs' VPPA] claim is subject to arbitration."

The delegation extends to "all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Terms of Use and the Arbitration Agreement." That broad sweep encompasses any challenges Plaintiff J.T. may raise that the arbitration agreement does not bind her, or is voidable, because she is a minor. *See* First Am. Compl. ¶ 7. The delegation clause expressly covers any claim that the arbitration agreement is "void or voidable." Beyond that, courts across the country have held that disaffirmance defenses challenge a contract's enforceability, not formation, such that an arbitrator must resolve them if a delegation clause exists.[4] Because those defenses apply to the entire contract, courts have also held that they are *not* the types of specific challenges to a delegation clause that a court may entertain. *See, e.g.*, *S.T.G.*, 752 F. Supp. 3d at 1208.

In sum: because Plaintiffs Cabonios, J.T., Gonzales, Newton, and Taylor assented to the January 2025 TOS and, J.T. additionally assented to the February 2026 TOS, Plaintiffs formed an arbitration agreement. All other disputes relating to the Operative TOS or the arbitration agreement must be resolved by the arbitrator on an individual basis.

The addition of Plaintiff Castaneda does not alter the analysis. Mr. Castaneda accepted the March 2019 TOS, which provide that arbitrations will be conducted pursuant to the AAA Consumer Arbitration Rules. *See* Kiefer Decl., Ex. 4 § 14. The Ninth Circuit has held that, as here, incorporation of AAA's rules into the parties'

---

[4] *See, e.g.*, *K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022) ("As long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator."); *In re StockX Customer Data Sec. Breach Litig.,* 19 F.4th 873, 883, 885-86 (6th Cir. 2021) (similar).

arbitration agreement means the parties agreed to delegate issues of arbitrability to an arbitrator. *See Patrick*, 93 F.4th at 481.

C. The Arbitration Agreement Covers Plaintiffs' Claim.

Even if the Court addresses arbitrability, Plaintiffs' VPPA claim indisputably falls within the arbitration agreement's broad scope. Any "[d]oubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).

Here, the parties agreed to arbitrate "[a]ll disputes arising out of, relating to, or in connection with these Terms of Use or your use of the Site and/or Services." Kiefer Decl., Ex. 3 § 14; *id.* Ex. 4 § 14; Ahmed Decl., Ex. A § 13 (materially similar). The phrase "arising out of or relating to" indicates a "broad arbitration clause." *Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*, 2012 WL 12878644, at *4 (C.D. Cal. Nov. 2, 2012). Plaintiffs' VPPA claim relates to and is in connection with the TOS because it is predicated on Plaintiffs' relationship with Crunchyroll, which the TOS govern. In addition, Plaintiffs' challenge to Crunchyroll's data-sharing practices relates to Crunchyroll's privacy policy, referenced in the TOS. Ahmed Decl., Ex. A, preamble; Kiefer Decl., Ex. 3 § 1. Accordingly, Plaintiffs' claims "touch matters covered by the parties' agreements," making them arbitrable. *Quiksilver*, 2012 WL 12878644, at *4 (cleaned up).

D. J.T. Cannot Disaffirm the Arbitration Agreement.

Any argument that J.T. may avoid the arbitration agreement because she is a minor—a challenge, again, the arbitrator must address—fails. Under New York law,[5] contracts with minors are voidable, not void. *See Ziboukh v. Whaleco, Inc.*, 95 F. Supp. 3d 349, 398 (E.D.N.Y 2025) (collecting cases). That minors may disaffirm contracts does not undermine minors' ability to enter such contracts or mean that they

[5] The Operative TOS include a New York choice-of-law clause, which must be enforced because J.T. assented to the Operative TOS.

were not formed. *See id.* A minor's right to disaffirm contracts is also not absolute. Disaffirmance is not available when a minor cannot return the benefits she received from the contract and permitting the minor to disaffirm would put her in a superior position absent the contract. *See I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 209-10 (S.D.N.Y. 2015) (collecting cases and precluding minor from disaffirming a contract on that ground). California law is in accord. *See Garcia*, 2026 WL 413636, at *5 ("R.G.'s disaffirmance defense falls flat in light of her continued use of the platform through September 8, 2025. . . . Disaffirmance may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit.") (cleaned up); *S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 2025 WL 3539164, at *4 (S.D. Cal. Dec. 10, 2025) (similar).

Here, J.T. may not disaffirm the arbitration agreement she repeatedly accepted. At the threshold, J.T.'s filing this lawsuit is not an act of disaffirmance because J.T. watched a video on Crunchyroll on May 26, 2026, after filing. Ahmed Decl. ¶ 33. So, J.T. has *ratified*, not disaffirmed, the February 2026 TOS.

But even if she had disaffirmed the February 2026 TOS, that disaffirmance would be ineffective because it would make J.T. better off than if she had never entered the contract. J.T.'s account accepted Crunchyroll's TOS when it was created in July 2020 (Ahmed Decl. ¶¶ 6, 21), in 2023, twice in 2025, and twice again in 2026. Since October 2023, J.T. has watched approximately 118 hours of Crunchyroll video content, at least 54 of which were after she accepted the January 2025 TOS. *Id.* ¶ 33. Plainly, J.T. has enjoyed the benefits of all that viewing, benefits it is impossible for her to "return."[6] Just as in *I.C.* and *Garcia*, J.T. is precluded from disaffirming the Operative TOS and must be compelled to arbitrate her claim.

Alternatively, even if J.T.'s father created the account for her benefit and

[6] The point applies equally to Plaintiff Cabonios if he was a minor in April 2025 when he created his account, given that he has watched approximately 44 hours of Crunchyroll video content since then. Ahmed Decl. ¶¶ 16, 20.

accepted the Operative TOS, courts have repeatedly compelled minors who used their parent's account to arbitrate their claims.[7]

### II. The Court Must Stay This Case Pending Arbitration.

Because Crunchyroll has requested a stay pending arbitration, this Court must stay the case if it grants Crunchyroll's motion to compel. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).

## CONCLUSION

This Court should grant Defendants' motion, compel Plaintiffs to arbitrate their claims, and stay this case.

Respectfully submitted,

Dated: July 22, 2026

**ZWILLGEN LAW LLP**

By: /s/ *Oliver M. Kiefer*

Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

**ZWILLGEN PLLC**

Sudhir V. Rao (*pro hac vice* forthcoming)
Sudhir.rao@zwillgen.com
183 Madison Avenue, Suite 1601
New York, NY 10016
Telephone: (646) 362-5590

*Attorneys for Defendant Crunchyroll, LLC*

[7] *See, e.g.*, *E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026); *S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025); *A. A. v. Roku, Inc.*, 2026 WL 1349064, at *3 (N.D. Cal. May 14, 2026).

**LOCAL RULE 11-6 VERIFICATION**

The undersigned, counsel of record for Defendant Crunchyroll, LLC, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 22, 2026 ZWILLGEN LAW LLP

By: /s/ Oliver M. Kiefer
Oliver M. Kiefer (SBN 332830)

*Attorney for Defendant Crunchyroll, Inc.*