**ABIRI LAW, PC**
Robert Abiri (SBN 238681)
rabiri@abirilaw.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
t. 949.459.2133
f. 949.534.4367

**CUSTODIO & DUBEY, LLP**
Vineet Dubey (SBN 243208)
445 Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Fax: (213) 785-2899
dubey@cd-lawyers.com

**DON BIVENS PLLC**
Don Bivens
Maxwell K. Weiss
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com
max@donbivens.com

*Attorneys for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FRANCISCO CABONIOS, et al.,

*Plaintiffs,*

v.

CRUNCHYROLL LLC, a Delaware corporation,

*Defendant.*

CASE NO.: 2:26-cv-02373-JLS-MARx

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT CRUNCHYROLL, LLC'S MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS AND ALTERNATIVE MOTION TO TRANSFER**

Date: October 2, 2026
Time: 10:30 a.m.
Courtroom: 8A, 8th Floor
Assigned to: Judge Josephine L. Staton

## TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. STATEMENT OF RELEVANT FACTS .......... 3

- A. Crunchyroll Rewrote Its Dispute-Resolution Regime After Receiving Notice Of The VPPA Dispute .......... 3
- B. Crunchyroll's Reliance On Exemplars Is Insufficient .......... 4
- C. The Relevant Account Histories Differ Materially By Plaintiff .......... 5

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 7

- A. Crunchyroll Cannot Rewrite Its TOS To Govern Accrued Claims .......... 7
  1. The Retroactive Amendment Power Is Illusory .......... 7
  2. Crunchyroll Must Prove Any Earlier Agreement .......... 9
  3. The New Delegation Clause Does Not Avoid Judicial Review .......... 9
- B. Crunchyroll Has Not Proven Plaintiff-Specific Assent .......... 11
  1. Account-Level Activity Does Not Prove Individual Assent .......... 11
  2. Crunchyroll Cannot Enforce An Agreement Against Cabonios .......... 16
  3. Crunchyroll Has Not Proven J.T.'s Assent .......... 17
  4. Crunchyroll Has Not Proven Castaneda's Assent .......... 18
  5. Crunchyroll Must Prove Gonzales's, Newton's And Taylor's Agreements .......... 19
- C. The Alternative Motion To Transfer Fails .......... 19
  1. *Atlantic Marine* Does Not Apply .......... 19
  2. The Forum Selection Clause Does Not Reach This VPPA Claim .......... 20
  3. § 1404(a) Does Not Favor Castaneda's Claim .......... 21

V. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
571 U.S. 49 (2013) ....................19-20

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
785 F.3d 1320 (9th Cir. 2015) ....................6

*Avery v. Integrated Healthcare Holdings, Inc.*,
218 Cal. App. 4th 50 (2013) ....................9, 19

*Berg v. Traylor*,
148 Cal. App. 4th 809 (2007) ....................16

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................12

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................7, 9-10

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ....................7, 11, 18

*Coughenour v. Del Taco, LLC*,
57 Cal. App. 5th 740 (2020) ....................16

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) ....................20

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ....................16

*Espejo v. S. Cal. Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (2016) ....................12-13

*Fabian v. Renovate Am., Inc.*,
42 Cal. App. 5th 1062 (2019) ....................12

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) .................... 6
*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) .................... 10-11
*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026) .................... 13-15
*J.R. v. Elec. Arts Inc.*,
98 Cal. App. 5th 1107 (2024) .................... 16
*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .................... 14-15, 18
*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) .................... 6, 11
*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .................... 21
*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .................... 6, 12
*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .................... 11
*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th 1425 (2012) .................... passim
*Ruiz v. Moss Bros. Auto Grp., Inc.*,
232 Cal. App. 4th 836 (2014) .................... 6-7, 13
*Waggoner v. Panera, LLC*,
2025 WL 2377072 (C.D. Cal. May 20, 2025) .................... 2, 6, 8, 13, 21
*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .................... 20

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) .......... 7

**Statutes**

28 U.S.C. § 1404(a) .......... 21
Cal. Civ. Code § 1654 .......... 20
Cal. Fam. Code § 6710 .......... 16

**Rules**

9th Cir. R. 36-3 .......... 14

# OPPOSITION

## I. INTRODUCTION

Plaintiffs Francisco Cabonios, J.T., a minor, by and through her parent and guardian ad litem Oskar Toruno, Anthony Gonzales, Matthew Newton, Alicia Taylor, and Oscar Castaneda ("Plaintiffs") present this consolidated opposition to Defendant Crunchyroll LLC's ("Crunchyroll") Motion to Compel Arbitration ("MTC") and Stay Further Proceedings and Alternative Motion to Transfer ("MTT") (collectively, the "Motions"), as they are based on the same set of underlying facts and largely overlapping arguments.

Crunchyroll asks the Court to compel six different plaintiffs to individual arbitration by treating changing versions of its Terms of Service ("TOS") and account-level activity as though they establish one uniform agreement. In doing so, it also seeks to enforce a dispute-resolution regime it materially rewrote only after receiving notice of the very VPPA dispute now before the Court. The threshold questions are plaintiff-specific: which TOS, if any, governed each Plaintiff and the classes they each respectively represent; whether Crunchyroll proved that each Plaintiff agreed to it; and only then whether the asserted arbitration, delegation, and forum provisions are enforceable. Failing that, Crunchyroll requests the matter in its entirety be transferred to New York.

The chronology of the facts is highly relevant here, yet Crunchyroll omits perhaps the most important part: Crunchyroll had notice of Plaintiffs' VPPA dispute on January 15, 2025, roughly two weeks ***before*** it materially rewrote its TOS on January 28, 2025. This rewrite attempts to cause significant difficulty for the already known claims to proceed. It replaced AAA with NAM; added a mandatory individualized notice-and-conference process and 60-day waiting period; added an express delegation clause assigning "formation," enforceability, voidability, and arbitrability to the arbitrator; created a 100-demand batching protocol; and,

critically, unilaterally declared that the new regime covers claims that already "arose" or "were asserted" before the agreement existed and provides that future material dispute-resolution amendments "will apply to all claims not yet filed." California law limits a party's ability to use unilateral amendment authority to rewrite the arbitral rules governing accrued or known claims. *See Peleg v. Neiman Marcus Group, Inc.,* 204 Cal. App. 4th 1425, 1465 (2012); *Waggoner v. Panera, LLC*, 2025 WL 2377072, at *7 (C.D. Cal. May 20, 2025).

If an earlier arbitration agreement governs any Plaintiff, Crunchyroll must prove consent to that earlier agreement independently. That is where Crunchyroll's proof falls short. It controls the records underlying the alleged assent events, yet submitted neither plaintiff-specific transactional evidence nor a sufficiently detailed explanation establishing how the account-level events on which it relies are attributable to the particular Plaintiffs. Instead, its head of engineering Samir Ahmed ("Ahmed") reports the conclusions of an investigation, attributes account activity to individual Plaintiffs, and attaches exemplars. Exhibit C illustrates why this is important: the purported February 2025 notice offered for four Plaintiffs is instead addressed to an internal Crunchyroll recipient and bears a 2026 footer, rendering it impossible to stand for what Crunchyroll claims. *See* Ahmed Decl. Ex. C. Crunchyroll bears the burden to prove formation; Plaintiffs do not bear the burden to disprove contractual events Crunchyroll has not adequately established.

These gaps matter differently for each Plaintiff in different ways. Cabonios was 17 on Crunchyroll's alleged April 2025 signup date and thus to the extent he personally contracted, he disaffirms the agreement. J.T.'s account is tied to her father's email and household-device activity that does not identify the actor. Castaneda's original agreement had no arbitration clause, and Crunchyroll has no individualized record that he accepted the later arbitration terms. Gonzales, Newton,

and Taylor may present earlier-agreement issues, but those earlier contracts must be proven rather than merely preserved in a footnote.

The same defects undermine transfer. The New York forum clause is part of an agreement Crunchyroll must first establish. Earlier TOS either pointed to California or, in the January 22 archive, contained conflicting California and New York language. And if the Court reaches different conclusions for different Plaintiffs, the consequences should follow plaintiff by plaintiff—not through a wholesale transfer of each of their claims to New York.

Crunchyroll has not carried its formation burden on the record it chose to submit. Accordingly, the Court should deny both motions.

## II. STATEMENT OF RELEVANT FACTS

### A. Crunchyroll Rewrote Its Dispute-Resolution Regime After Receiving Notice Of The VPPA Dispute

Plaintiffs allege Crunchyroll's implementation of Braze technology disclosed users' personally identifiable video-viewing information without VPPA-compliant consent. First Amended Complaint ("FAC") ¶¶ 27-43, 57-67. Plaintiffs, along with thousands of other users, sent written notice to Crunchyroll concerning that conduct on January 15, 2025. *Id.* ¶ 46. Crunchyroll itself acknowledges the January 15, 2025 notice. MTC at 18 n.3.

Crunchyroll's evidence continues the subsequent chronology. The declaration of its counsel, Oliver Kiefer ("Kiefer"), includes iterations of the TOS. Kiefer's Exhibit 2 is an archive of the TOS on January 22, 2025. Kiefer Decl. ¶ 3. Ahmed then declares that Crunchyroll "substantively updated" the TOS on January 28. Ahmed Decl. ¶ 9. Kiefer's Exhibit 3 captures the rewritten TOS on January 29. Kiefer Decl. ¶ 4.

The January 22 TOS required individual arbitration through AAA. Kiefer Decl. Ex. 2 § 14. The January 28 version instead requires NAM arbitration after a

new individualized notice process, expressly delegates formation and enforceability, adds a mass-filing protocol that processes coordinated demands in sequential batches of 100, and expressly reaches claims that previously "arose" or "were asserted." Kiefer Decl. Ex. 3 § 14(a), (b), (f). The same section provides that future material amendments become effective 30 days after notice and apply to "all claims not yet filed." *Id*. § 14(j).

Only after that rewrite did Crunchyroll send the update emails it invokes—February 2, 5, or 7 depending on the account—and only later did it allegedly display blocking "Continue" screens: March 7 for J.T. and Taylor, March 22 for Gonzales, and April 12 for Newton. Ahmed Decl. ¶¶ 23-27, 37-40, 45-46, 51-53.

**B. Crunchyroll's Reliance On Exemplars Is Insufficient**

Ahmed states that his declaration is based on personal knowledge, conversations with Crunchyroll employees, and review of Crunchyroll records, and that after Plaintiffs' counsel supplied possible account email addresses, "my team investigated" them. Ahmed Decl. ¶¶ 3, 13. But neither Ahmed's declaration nor the attached exhibits adequately explain the database fields, account identifiers, device information, event data, or other records on which his team relied to attribute the asserted electronic acts to the particular Plaintiffs. Nor does Ahmed explain the methodology by which an account-level event was attributed to the human actor he identifies, or provide comparable plaintiff-specific evidence substantiating the alleged 2023 and 2024 acceptance events on which Crunchyroll's fallback to earlier TOS depends.

The significance of that distinction is visible on the face of the exhibits. Despite Ahmed's attestation, Exhibit C is not an individualized email to any Plaintiff. Rather, it identifies the recipient as an internal Crunchyroll recipient ("This email was sent to daniela.spencer@crunchyroll.com") and bears a "©2026 Crunchyroll LLC" footer even though Ahmed says it is the February 2025 email

"received" by J.T., Gonzales, Newton, and Taylor. *Id.* ¶¶ 23, 37, 45, 51 & Ex. C. Exhibit H is an archival capture two days after Castaneda's alleged signup date. *Id.* ¶ 56 & Ex. H. And Exhibit B's "at least 18" confirmation conflicts with Cabonios's actual age. *Id.* ¶¶ 16-17 & Ex. B. These discrepancies demonstrate why proof is required of the actual transactions rather than assuming an exemplar is an individualized record.

### C. The Relevant Account Histories Differ Materially By Plaintiff

Initially, it is important to note that each Plaintiff represents a particular subclass of individuals in the putative class action. FAC ¶ 51.

Cabonios. Plaintiffs' counsel supplied three possible email addresses used or may have been used by Cabonios to create Crunchyroll Accounts. Ahmed Decl. ¶ 14. According to Ahmed, two of these accounts were not logged into after August 2023 and no videos were watched through them. Ahmed Decl. ¶ 15. He then attributes the third account to Cabonios and says it was created April 25, 2025. *Id.* ¶ 16. Cabonios was 17 on April 25, 2025. Declaration of Francisco Cabonios ("Cabonios Decl.") ¶ 2. Crunchyroll says he last watched a video on its platform on June 12, 2025, which again was when Cabonios was still a minor. Ahmed Decl. ¶ 20; Cabonios Decl. ¶ 2. Cabonios has not watched any videos or otherwise used Crunchyroll since turning 18. *Id.* ¶ 4. Cabonios expressly disaffirms any TOS or other agreements with Crunchyroll he purportedly entered into while a minor. *Id.* ¶ 5.

Gonzales, Newton, and Taylor. Gonzales created his original account on February 4, 2017, before Crunchyroll says it added arbitration to its TOS in June 2017. Ahmed Decl. ¶¶ 8, 35. Ahmed says a June 20, 2024 free-trial transaction "would have required" Gonzales to again accept the then-operative TOS. *Id.* ¶ 36. Newton created an account in March 2022 and Ahmed says a June 2023 subscription "would have required" another acceptance. *Id.* ¶¶ 43-44. Taylor created

her account in August 2024 and Ahmed similarly says a September 2024 subscription "would have required" acceptance. *Id*. ¶¶ 49-50. No exhibit depicts those 2023 or 2024 transactions or identifies the exact TOS allegedly presented.

J.T. and Castaneda. Crunchyroll concedes that the email associated with J.T.'s account belongs to her father. Ahmed Decl. ¶ 21. The account was created by her father in July 2020 when J.T. was below the then-stated minimum member age of 16. Declaration of Oskar Toruno ("Toruno Decl.") ¶¶ 2, 4; FAC ¶ 7; Kiefer Decl. Ex. 4 § 1. J.T. does not have access to her father's email account, nor did she pay for the subscription. Toruno Decl. ¶¶ 3-4. The operative TOS when Castaneda created his account contained no arbitration agreement. MTC at 17. Crunchyroll's later-arbitration theory rests on a generic 2020 advisal and an inference from Castaneda's subsequent app use, not a specific acceptance record by him. Ahmed Decl. ¶¶ 56-60.

## III. LEGAL STANDARD

When the existence of an arbitration agreement is disputed, the presumption favoring arbitration does not apply. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681-82 (9th Cir. 2023). As the party seeking to compel arbitration, Crunchyroll bears the burden of proving the existence of each agreement by a preponderance of the evidence. *Id.* at 681; *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); see also *Ashbey v. Archstone Property Management, Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). This Court applied the same burden in *Waggoner,* 2025 WL 2377072, at *2.

A summary-judgment-type standard is applied to disputed formation. *Hansen v. LMB Mortgage Services, Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). A movant can fail to carry its burden on the record submitted. Where the dispute concerns attribution of an electronic act, the proponent must offer evidence from which the Court can determine that the act was the plaintiff's. See *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 843-46 (2014).

The Court must resolve a challenge that an arbitration agreement was never formed even in the presence of a delegation clause. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). If an agreement was formed, a court next resolves any challenge directed specifically to the enforceability of the delegation provision. *Id*. Plaintiffs specifically challenge the January 2025 delegation provision here. See *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011-12 (9th Cir. 2023).

A movant cannot rely on previous iterations of an arbitration agreement if later ones are deemed invalid, unless they were properly presented to the court. *Ruiz,* 232 Cal. App. 4th at 846. If not previously presented, the "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

## IV. ARGUMENT

### A. Crunchyroll Cannot Rewrite Its TOS To Govern Accrued Claims

#### 1. The Retroactive Amendment Power Is Illusory

Crunchyroll's longstanding TOS reserved a unilateral right to modify the terms and treated continued use after posting changes or giving required notice as acceptance. Kiefer Decl. Ex. 2 § 5. California law permits reasonable amendment powers, but it does not permit a drafter to reserve the right to change the arbitration rules governing a claim after that claim has accrued or become known.

*Peleg* draws a critical distinction between a modification provision that is silent as to accrued or known claims and one that expressly reaches them. In the former circumstance, the implied covenant may constrain the drafter from retroactively altering accrued claims. *Peleg,* 204 Cal. App. 4th at 1465. But where the agreement expressly permits modifications to govern accrued or known claims, the implied covenant cannot contradict that express contractual language, and the drafter's promise to arbitrate is illusory. *Id*. The reason is practical: otherwise the

drafter can anticipate a specific dispute and alter the arbitral process to its advantage. *Id*. at 1459 ("The vice of the modification provision in this case is that it allows the employer to manipulate the arbitration process, tailoring it to fit specific cases, either by making the process more difficult or more expensive for the employee, or by revoking the Agreement in the belief that a judicial forum is preferable. Accordingly, if a claim has accrued or if the employer knows about a claim, all parties to the Agreement should be bound by the version in effect at that time; no changes should apply after the point of accrual or knowledge.") This is exactly what Crunchyroll did here, altering the arbitration provisions *after* being made aware of the VPPA claims, and stating material amendments "will apply to all claims not yet filed," while § 14(b) expressly reaches claims that already "arose" or "were asserted." Kiefer Decl. Ex. 3 § 14(b), (j).

This Court's *Waggoner* decision underscores the point. There, Panera could amend its arbitration agreement, but the agreement expressly provided that amendments "shall not apply to a pending claim nor to any claim that accrued or was known" beforehand. *Waggoner,* 2025 WL 2377072, at *7. Citing *Peleg*, this Court held that protection sufficient to defeat the illusory-contract argument. *Id*. The protection that saved Panera's agreement is precisely what Crunchyroll's express text eliminates.

And this is not a hypothetical future concern. Crunchyroll knew of Plaintiffs' VPPA dispute before the January 28 substantive rewrite. FAC ¶ 46; MTC at 18 n.3; Ahmed Decl. ¶ 9. The new language then expressly reached claims already "asserted." To the extent Crunchyroll relies on its preexisting unilateral amendment mechanism—notice plus continued use—to impose the January 2025 regime on accrued or known claims, *Peleg* and *Waggoner* foreclose that theory.

### 2. Crunchyroll Must Prove Any Earlier Agreement

Plaintiffs do not contend that rejection of the January 2025 rewrite necessarily means no Plaintiff or subclass can be required to arbitrate. *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50 (2013) holds that the "critical point in time is when the claims accrued," not when suit was filed, and that claims may remain governed by the arbitration agreement existing at accrual. *Id.* at 61-62. The consequence is straightforward: Crunchyroll must not only identify, but also prove the particular earlier agreement it says governed each Plaintiff and claim.

That burden cannot be satisfied by a footnote reservation. Crunchyroll says only that "[m]ost Plaintiffs also assented to earlier versions" and "preserves" those arguments. MTC at 3 n.1. As to Gonzales, Newton, and Taylor, Ahmed relies on 2023 or 2024 subscription events that "would have required" acceptance, but Crunchyroll supplies none of the historical screens, timestamps, audit records, or precise TOS versions allegedly presented. Ahmed Decl. ¶¶ 36, 44, 50.

Gonzales illustrates why the distinction matters. His February 2017 account creation cannot establish arbitration because Crunchyroll says arbitration was not added until June 2017. Ahmed Decl. ¶¶ 8, 35. Crunchyroll therefore depends on a later transaction or amendment, and must prove it. Newton and Taylor may present stronger earlier-agreement theories if Crunchyroll can prove the asserted 2022-2024 assent events, but the Motion does not permit the Court to infer the contents and acceptance of those agreements from Ahmed's "would have required" formulation alone.

### 3. The New Delegation Clause Does Not Avoid Judicial Review

The January 2025 rewrite also cannot decide its own applicability. *If* the Court finds that a January 2025 agreement was formed, Plaintiffs separately and specifically challenge the enforceability of the delegation provision contained in that rewrite. *Bielski* permits a party to rely on the same contractual defects directed at the

broader arbitration agreement so long as the party specifically explains why those defects also undermine the delegation agreement. *Id.* at 1011. The delegation clause here assigns the arbitrator "exclusive authority" over interpretation, applicability, enforceability, and "formation," including whether the agreement is void or voidable. Kiefer Decl. Ex. 3 § 14(b). Plaintiffs challenge that delegation specifically because Crunchyroll added it only after receiving notice of the VPPA dispute, simultaneously with language purporting to make the revised dispute-resolution regime apply to claims that had already "arose" or "were asserted." *Id*. § 14(b), (j).

That chronology creates substantially more than the mere existence of a unilateral modification clause. *Peleg* identified the vice in permitting a drafter to alter arbitration rules after a claim has accrued or become known: doing so permits the drafter to "manipulate the arbitration process" in light of a particular existing dispute. *Peleg*, 204 Cal. App. 4th at 1459, 1465. That concern applies specifically to delegation here. Before receiving notice of this VPPA dispute, Crunchyroll's agreement did not contain the express delegation provision on which it now relies. After receiving that notice, Crunchyroll added a provision assigning the arbitrator authority over "formation" and voidability and simultaneously declared that the revised regime reaches already-arisen and asserted claims. Kiefer Decl. Ex. 3 § 14(b), (j). Crunchyroll now invokes that newly added provision to argue that an arbitrator, rather than this Court, must decide the validity and applicability of the same post-dispute rewrite.

The same circumstances also support Plaintiffs' specific unconscionability challenge to delegation. California requires both procedural and substantive unconscionability on a sliding scale. *Bielski*, 87 F.4th at 1013. On the procedural side, *Heckman* is instructive. There, Ticketmaster imposed materially revised online arbitration terms on existing consumers and made them reach prior transactions and claims. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683 (9th Cir. 2024).

Relying on *Peleg*, the Ninth Circuit held the retroactive-modification feature procedurally unconscionable even standing alone. *Id*. at 683. While Plaintiffs do not contend that Crunchyroll's NAM rules are identical to the unusually restrictive New Era procedures in *Heckman*, the concern is concrete: Crunchyroll imposed the new delegation clause after receiving notice of the dispute to which it now seeks to apply it.

The substantive concern is correspondingly narrow. Plaintiffs do not argue that delegation clauses are inherently one-sided. Rather, the challenged combination of § 14(b) and § 14(j), as applied to an already-known dispute, permits Crunchyroll to alter after the dispute arises the decisionmaker who will determine whether Crunchyroll's own revised terms are valid and applicable. That is not merely unequal bargaining power or the "mere presence" of modification authority rejected as insufficient in *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 479–80 (9th Cir. 2024); it is the exercise of express retroactive authority after notice of the particular dispute.

*Caremark* confirms the sequence: first formation; next any specific challenge to delegation; only then do remaining scope or enforceability issues go to an arbitrator. *Caremark, LLC,* 43 F.4th at 1030. Thus, at a minimum, the Court must decide the formation questions first and then resolve this specifically directed challenge to the January 2025 delegation provision before treating that provision as a basis to send the remaining issues to an arbitrator.[1]

### B. Crunchyroll Has Not Proven Plaintiff-Specific Assent

#### 1. Account-Level Activity Does Not Prove Individual Assent

Crunchyroll bears the ultimate burden of proving by a preponderance each arbitration agreement it seeks to enforce, not Plaintiffs. *Johnson*, 57 F.4th at 681;

[1] Crunchyroll's delegation authorities (MTC at 7, 18-20) presuppose an established delegation agreement; they do not let a disputed delegation clause establish its own formation or validity.

*Knutson*, 771 F.3d at 565. Plaintiffs do not dispute that a properly presented clickwrap can form a contract. *See Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856-58 (9th Cir. 2022). But before the Court can enforce one, Crunchyroll must prove that the particular Plaintiff performed, or is legally bound by, the act of assent on which Crunchyroll relies.

Ahmed supplies conclusions without an adequate foundation connecting the alleged electronic acts to the particular Plaintiffs. The deficiency is not merely that Crunchyroll did not attach its raw database or event logs. A sufficiently detailed declaration may establish electronic assent where it explains the system and factual basis connecting the recorded event to the particular user. See *Espejo v. Southern California Permanente Medical Group*, 246 Cal. App. 4th 1047, 1060-62 (2016). Here, however, Ahmed does not provide that connecting foundation. He says his "team investigated" the email addresses counsel supplied and then states that particular Plaintiffs "received" emails, "opened" applications, and "clicked" buttons, but does not explain the underlying data or methodology by which those account-level events were attributed to those individuals. Ahmed Decl. ¶¶ 13, 23-32, 37-53.

Moreover, Exhibit C cannot substantiate the transmission Ahmed describes: it is not addressed to any Plaintiff and bears a 2026 footer, despite being offered as the February 2025 email those Plaintiffs allegedly received. For the earlier agreements, the inference is even more attenuated: Ahmed states that subscription transactions "would have required" J.T., Gonzales, Newton, and Taylor to accept then-operative TOS. *Id*. ¶¶ 22, 36, 44, 50. A system rule may be relevant evidence but it is not, without an adequate attribution foundation, proof that a particular person assented to a particular agreement.

*Fabian v. Renovate America, Inc.*, 42 Cal. App. 5th 1062 (2019) illustrates that a declarant's summary of what business records supposedly establish is not necessarily enough. There, the movant produced a contract bearing the plaintiff's

purported electronic signature and an employee declaration asserting from company records that the plaintiff had entered the contract. *Id*. at 1064-65, 1068-70. The evidence remained insufficient because the declarant did not supply the factual connection between the electronic event and the particular plaintiff—how the document was transmitted, how the electronic signature was placed, or how the signer's identity was verified. *Id*. at 1069-70. The court characterized the unsupported conclusion as little more than a "bare statement" that left a "critical gap" in the movant's proof. *Id*. at 1070. That is the problem here. Ahmed states the ultimate conclusions: that particular Plaintiffs "received," "opened," and "clicked" without producing or explaining the underlying records sufficiently to establish who performed those acts.

*Ruiz* is also instructive. The employer produced an agreement bearing the plaintiff's electronic name, date, and timestamp, and its declarant asserted that the plaintiff signed it. *Ruiz,* 232 Cal. App. 4th at 843-44. The evidence was still insufficient because the declarant did not explain how she determined that the electronic act was attributable to that plaintiff. *Id.* at 843-46. The court emphasized that this "was not a difficult evidentiary burden to meet, but it was not met." *Id.* at 844. *Espejo* shows the other side of the line: a detailed declaration supplied the critical connection by explaining unique credentials, password-reset and signature procedures, and how the system recorded the signer's name, date, time, and IP address. *Id.* at 1060-62.

This Court's *Waggoner* decision illustrates the same practical distinction. Panera carried its burden only after the Court held a § 4 hearing supported by a unique login and one-time password, exact timestamps, a detailed onboarding history, surrounding transactions, and live testimony explaining the audit trail. *Waggoner,* 2025 WL 2377072, at *6. Crunchyroll has not presented comparable plaintiff-specific attribution evidence. Crunchyroll's repeated reliance on *Ireland-*

*Gordy v. Tile, Inc.*, 2026 WL 594859 (9th Cir. Mar. 3, 2026), does not cure that defect. As an initial matter, *Ireland-Gordy* is an unpublished memorandum disposition and expressly "is not precedent" except as permitted by Ninth Circuit Rule 36-3. More importantly, its reasoning reinforces rather than eliminates Crunchyroll's evidentiary burden. The Ninth Circuit began its analysis by holding that Tile, "as the party seeking arbitration," bore the burden to prove both notice of the updated TOS and mutual assent. *Id*. at *2 (quoting *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023)). And the court emphasized that inquiry notice is always a "fact-intensive analysis" and expressly declined to hold "that notice by mass email establishes inquiry notice in every case." *Id*. at *4.

The record in *Ireland-Gordy* was materially different. The actual update email was before the court; Tile established that it sent that notice to registered accountholders at the email addresses associated with their accounts; and Tile's plaintiff-specific records showed subsequent app activity, including four identified app openings for Doe and subsequent recorded use by Broad. *Id*. at *1-4. Here, by contrast, Exhibit C is not a transmission to any Plaintiff: on its face it is addressed to an internal Crunchyroll recipient and bears a 2026 footer. Ahmed Decl. Ex. C. Crunchyroll supplies no corresponding plaintiff-specific transmission or delivery record, and its account-level assertions do not establish the identity of the human actor where an email address or device was shared. Nor does Ahmed explain what transmission, delivery, or account data permits him to conclude that the particular Plaintiffs received the purported 2025 notice. The issue is therefore not whether Crunchyroll was required to attach a particular category of business record; it is whether the evidence it chose to submit establishes the notice that *Jackson* places on Crunchyroll to prove.

Nor did *Ireland-Gordy* decide whether a company may use a post-dispute amendment to retroactively alter an accrued and known claim under *Peleg*, or

whether the newly added delegation provision was itself unenforceable; the appellees there did not make such a challenge. *Ireland-Gordy* therefore addresses the legal effect of adequately proven notice and subsequent use. It does not relieve Crunchyroll of proving those predicates here.

Crunchyroll's proof must therefore be assessed on its own record. Exhibit C may illustrate the form of notice Crunchyroll contends it used, but it is not a contemporaneous plaintiff-directed transmission and contains facial indications that it was generated in 2026. And attribution presents an additional problem where the account email or device does not identify the person acting through the account. Most notably, Crunchyroll concedes that the email address associated with J.T.'s account belongs to her father. Ahmed Decl. ¶ 21. Thus, even an account-level showing that a notice was sent to that address would not itself establish that J.T. received inquiry notice.

The later blocking "Continue" screens may constitute additional evidence of notice and assent if Crunchyroll proves that the particular Plaintiff personally encountered and acted upon them. But that is the predicate formation question disputed here. Neither *Jackson* nor *Ireland-Gordy* permits the Court to assume the identity of the actor behind an account-level event; each places the burden on the party seeking arbitration to establish the notice and assent on which the asserted updated agreement depends.

The interface cases Crunchyroll relies on address notice or manifestation once the relevant interface and user interaction are established. Similarly, the continued-use cases presuppose adequate notice and use by the person said to assent. They do not, however, shift Crunchyroll's burden of proving who agreed.

### 2. Crunchyroll Cannot Enforce An Agreement Against Cabonios

Crunchyroll's Cabonios theory creates a factual and legal dilemma. It says Cabonios personally created the identified account on April 25, 2025 and personally clicked "CREATE ACCOUNT." Ahmed Decl. ¶¶ 16-17. However, Cabonios was 17 on that day. Cabonios Decl. ¶ 2. Crunchyroll anticipated the issue, arguing in a footnote that its retained-benefits theory applies "if he was a minor in April 2025." MTC at 21 n.6.

To the extent Cabonios accepted the TOS, he expressly disaffirms every agreement accepted while a minor, including the arbitration agreement and delegation provision. Cabonios Decl. ¶ 5. California Family Code § 6710 permits disaffirmance before majority or within a reasonable time afterward. This action was filed March 5, 2026, less than four months after Cabonios turned 18, and his declaration removes any possible ambiguity as to disaffirmance. See Complaint, ECF No. 1. In *J.R. v. Elec. Arts Inc.*, 98 Cal. App. 5th 1107 (2024), the Court of Appeal affirmed denial of arbitration where a minor disaffirmed every agreement accepted through his game account, holding that the disaffirmance reached the arbitration agreement and the delegation provision specifically. *Id.* at 1115-18. *Coughenour v. Del Taco, LLC*, 57 Cal. App. 5th 740 (2020) likewise held that "the filing of a lawsuit is sufficient disaffirmance" and found a suit filed eight months after majority timely notwithstanding approximately four months of post-majority employment. *Id.* at 748-50; *see also Berg v. Traylor*, 148 Cal. App. 4th 809, 818-20 (2007); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1035-37 (N.D. Cal. 2020).

Crunchyroll's own records say Cabonios purportedly last watched a video on June 12, 2025, almost five months before he turned 18. Ahmed Decl. ¶ 20. Thus, there is no alleged post-majority use at all, and Cabonios confirms the same. Cabonios Decl. ¶ 4.

Crunchyroll's Exhibit B also presents an interesting dilemma for Crunchyroll. Crunchyroll says Cabonios personally encountered and clicked through that screen on April 25, 2025. Ahmed Decl. ¶¶ 16-18 & Ex. B. Yet the screen states that the person creating the account confirms being "at least 18 years of age," while Cabonios was indisputably 17. Cabonios Decl. ¶ 2. The discrepancy does not prove that Cabonios could not have clicked the button, but it creates a legal hurdle for Crunchyroll in terms of proving formation, especially given the lack of post-majority use and express disaffirmance.

### 3. Crunchyroll Has Not Proven J.T.'s Assent

Crunchyroll admits that the email address associated with J.T.'s account belongs to her father. Ahmed Decl. ¶ 21. Yet Ahmed converts account-level activity into assertions that J.T. received emails sent to that address, encountered Roku prompts, clicked Continue, and watched specified hours of Crunchyroll content. *Id.* ¶¶ 23-33. No underlying record explains how Crunchyroll determined that J.T., rather than her father or another person, performed those acts. In fact, her father created the account in July 2020, when J.T. was below the then-operative TOS's minimum member age of 16. FAC ¶ 7; Kiefer Decl. Ex. 4 § 1; Toruno Decl. ¶¶ 2, 4. J.T. does not have access to her father's email account, did not pay for the subscription, and the Roku device relied on by Crunchyroll is a shared household device in the common area of their home and accessible by multiple people. Toruno Decl. ¶¶ 3-5. Crunchyroll's own February 2026 terms now expressly distinguish the primary account holder from "Authorized Users" and state that creating Profiles does not create a separate account or contract. Ahmed Decl. Ex. A § 2. That later language is not offered retroactively; it illustrates why an account-level event does not itself identify the contracting person.

These are antecedent formation questions for the Court. If J.T.'s father formed the relevant agreement, Crunchyroll must establish a legal basis for binding

J.T. to his assent. If Crunchyroll instead contends that J.T. personally accepted the relevant agreement, it bears the burden to prove that act of assent. *See Jackson,* 65 F.4th at 1099; *Caremark, LLC,* 43 F.4th at 1030. The disputed delegation clause cannot bypass the antecedent question whether J.T. entered the agreement at all.

Crunchyroll devotes substantial argument to whether J.T., as a minor, effectively disaffirmed an agreement. MTC at 20-22. Plaintiffs do not rely on disaffirmance as an independent basis for denying this Motion as to J.T. The threshold defect is more fundamental: Crunchyroll has not established that J.T. herself was the contracting party whose assent created the agreement it seeks to enforce.

### 4. Crunchyroll Has Not Proven Castaneda's Assent

Castaneda's original agreement contained no arbitration clause. Crunchyroll therefore must prove a later agreement. Its evidence is inferential. Ahmed says that beginning in January 2020 Crunchyroll generally displayed Exhibit I to users "logging into the App," and that users could not proceed without clicking "Acknowledge." Ahmed Decl. ¶¶ 57-59. But he identifies no Castaneda-specific presentation, date, device, or click record to connect those purported facts to Castaneda directly. He instead cites Castaneda's allegation that he periodically used the app through September 2024 and simply infers that Castaneda must have encountered the screen. *Id*. ¶ 60.

Exhibit I is also materially different from the later 2025 prompts. It says the TOS were updated, supplies a link, and presents "ACKNOWLEDGE"; it does not state that clicking Acknowledge constitutes agreement to or acceptance of the updated terms. Ahmed Decl. Ex. I. On this record, incorporation of AAA rules cannot solve the antecedent problem. AAA incorporation may delegate arbitrability after assent to the agreement incorporating those rules; it cannot prove assent to the March 2019 TOS itself.

#### 5. Crunchyroll Must Prove Gonzales's, Newton's And Taylor's Agreements

For Gonzales, Newton, and Taylor, Crunchyroll may ultimately establish an earlier arbitration agreement. Plaintiffs do not ask the Court to pretend otherwise. But *Avery* requires identification of the agreement that governed the claim, and Crunchyroll bears the burden to prove that agreement was formed. Its footnote preserving earlier-TOS arguments does not do so. Ahmed's statement that later subscription transactions "would have required" acceptance is not accompanied by the 2023 or 2024 interface, the exact TOS allegedly linked, or a plaintiff-specific event record. Ahmed Decl. ¶¶ 36, 44, 50. Gonzales's original February 2017 account is especially significant because Crunchyroll itself says arbitration did not enter its TOS until June 2017. *Id.* ¶¶ 8, 35.

As discussed above, Exhibit C does not itself substantiate an individualized 2025 transmission: it is addressed to an internal Crunchyroll recipient and bears a 2026 footer. Ahmed Decl. Ex. C. Nor does Ahmed explain the plaintiff-specific data or methodology underlying the asserted account events. Crunchyroll therefore has not carried its burden to prove, for each Plaintiff, a valid pre-January agreement governing the claim.

### C. The Alternative Motion To Transfer Fails

#### 1. *Atlantic Marine* Does Not Apply

*Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 62-66 (2013), presupposes a valid forum-selection agreement. Crunchyroll invokes the clean New York clause in the rewritten January 2025 TOS against Cabonios, J.T., Gonzales, Newton, and Taylor that was only updated after they noticed their VPPA

claims to Crunchyroll. MTT at 7-16. The formation and validity disputes above therefore precede *Atlantic Marine*.[2]

If the January 2025 rewrite does not govern, Crunchyroll's earlier exhibits do not establish a mandatory New York forum. The March 2019 TOS provide that California law governs and that legal actions arising under the TOS will be brought exclusively in California. Kiefer Decl. Ex. 4 § 13. The January 22, 2025 archive is facially contradictory: one sentence selects California, and without punctuation separating a new provision, the next text selects New York. Kiefer Decl. Ex. 2 § 13. An ambiguous forum clause is construed against the drafter. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009); *see also* Cal. Civ. Code § 1654.

### 2. The Forum Selection Clause Does Not Reach This VPPA Claim

Even assuming validity, which Plaintiffs dispute, the text of the forum-selection clause is narrow. Section 14, which covers arbitration, expressly covers disputes relating to the TOS "or your use of the Site and/or Services." Kiefer Decl. Ex. 3 § 14. Section 13, the forum-selection clause, expressly omits the latter category and applies to actions "arising from, relating to or in connection with these Terms." *Id*. § 13. Crunchyroll knew how to write a clause reaching every dispute related to use of its service, yet specifically did ***not*** use that language in § 13.

The VPPA claim does not allege a breach of the TOS or require interpretation of a contractual promise. It alleges an unlawful disclosure through Crunchyroll's Braze implementation. FAC ¶¶ 27-43, 57-67. Crunchyroll cites *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086-87 (9th Cir. 2018), where the court construed broad "related to" language where the securities claims were logically connected to the share-purchase agreements through which the plaintiffs

---

[2] Accordingly, Crunchyroll's cases analyzing the *Atlantic Marine* factors or discussing mandatory wording (MTT at 16-18, 19-21) are not relevant as they concern enforcement after establishing a valid forum agreement.

made the challenged investment, including alleging in the complaint the agreement was signed on the basis of defendant representations. Here, Plaintiffs' VPPA claims arise under federal statute and do not depend upon breach, interpretation, or enforcement of the TOS. Moreover, treating every statutory privacy claim by an account holder as "related to" the TOS would erase the clear textual distinction Crunchyroll itself drew between § 13 and § 14.

**3. § 1404(a) Does Not Favor Castaneda's Claim**

Crunchyroll concedes that it does not rely on the January 2025 forum-selection clause against Castaneda because he stopped using the App before any potential New York clause applied. MTT at 21. His claim is therefore governed by ordinary § 1404(a), which requires an individualized assessment of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Crunchyroll identifies no New York witness with unique knowledge of the Braze implementation and no New York-centered conduct requiring litigation there. Its principal argument is efficiency in keeping Castaneda with other Plaintiffs it assumes will be sent to New York.

That assumption cannot carry the motion. If one or more Plaintiffs remain here because Crunchyroll fails to prove arbitration or the New York clause, moving Castaneda creates rather than solves duplication. Independently, there is no basis to transfer Castaneda's claim to New York.

## V. CONCLUSION

Simply put, Crunchyroll has failed to carry its burden to establish consent to arbitration and thus formation of a valid agreement. Nor should it be permitted to apply the January 2025 rewrite retroactively to accrued or known claims after receiving notice of the VPPA dispute, as guarded against by *Peleg* and *Waggoner*. The Court should deny the Motion to Compel Arbitration and the Alternative Motion to Transfer.

DATED: August 24, 2026

**ABIRI LAW, PC**

By: /s/ Robert Abiri

Robert Abiri
rabiri@abirilaw.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
t. 949.459.2133
f. 949.534.4367

**CUSTODIO & DUBEY, LLP**
Vineet Dubey (SBN 243208)
445 Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Fax: (213) 785-2899
dubey@cd-lawyers.com

**DON BIVENS PLLC**
Don Bivens
Maxwell K. Weiss
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com
max@donbivens.com

*Attorneys for Plaintiffs and the Putative Classes*

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,323 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 24, 2026

**ABIRI LAW, PC**

By: /s/ Robert Abiri
Robert Abiri