Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

*Attorney for Defendant Crunchyroll, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FRANCISCO CABONIOS, J.T., a minor, by and through her parent and guardian *ad litem* OSKAR TORUNO, ANTHONY GONZALES, MATTHEW NEWTON, ALICIA TAYLOR, and OSCAR CASTANEDA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CRUNCHYROLL, LLC, a Delaware Corporation,

Defendant.

Case No. 2:26-cv-02373-JLS-MARx

**DEFENDANT CRUNCHYROLL, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS**

*[Filed concurrently with Reply Brief in Support of Alternative Motion to Transfer; Supplemental Declaration of Samir Ahmed; Declaration of Sudhir V. Rao]*

Date: October 2, 2026
Time: 10:30 a.m.
Courtroom: 8A, 8th Floor

Assigned to: Judge Josephine L. Staton
Referred to: Magistrate Judge Margo A. Rocconi

**TABLE OF CONTENTS**

INTRODUCTION ........ 1
ADDITIONAL BACKGROUND ........ 2
I. No Original Plaintiff Notified Crunchyroll of their VPPA Claim Before Suing Crunchyroll ........ 2
II. The Ahmed Declaration's Exhibits Reflect the Email Notices and Advisals as They Were Sent and Displayed at the Relevant Time. ........ 3
ARGUMENT ........ 4
I. The Court Must Compel Plaintiffs to Arbitrate Their Claims. ........ 4
A. Crunchyroll Did Not Unilaterally Modify Its TOS: The Original Plaintiffs and Crunchyroll Bilaterally Agreed to the Operative TOS. ........ 5
B. Plaintiffs' "Challenge" to the Delegation Clause Fails. ........ 7
C. Crunchyroll Established Assent. ........ 9
CONCLUSION ........ 13
LOCAL RULE 11-6 VERIFICATION ........ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.A. v. Roku, Inc.*,
2026 WL 1349064 (N.D. Cal. May 14, 2026) .......... 13

*Avery v. Integrated Healthcare Holdings, Inc.*,
218 Cal. App. 4th 50 (2013) .......... 7

*Azeveda v. Comcast Cable Commc'ns LLC*,
2019 WL 5102607 (N.D. Cal. Oct. 11, 2019) .......... 6

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .......... 8

*Cir. City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .......... 8

*E.A.R.R. v. Roku, Inc.*,
2026 WL 369238 (C.D. Cal. Feb. 6, 2026) .......... 13

*Espejo v. Southern Cal. Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (2016) .......... 10

*Fabian v. Renovate Am., Inc.*,
42 Cal. App. 5th 1062 (2019) .......... 10

*Franco v. Greystone Ridge Condo.*,
39 Cal. App. 5th 221 (2019) .......... 6

*French v. Roblox Corp.*,
2026 WL 2195890 (E.D. Pa. July 29, 2026) .......... 10, 11

*Garcia v. Roblox Corp.*,
2026 WL 413636 (C.D. Cal. Feb. 11, 2026) .......... 10

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) .......... 9

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) .......... 8, 9

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) .......... 8

*Ireland-Gordy v. Tile, Inc.*,
2026 WL 594859 (9th Cir. Mar. 3, 2026) .......... 10, 11

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) .......... 12

*Nanavati v. Adecco USA, Inc.*,
99 F. Supp. 3d 1072 (N.D. Cal. 2015) .......... 11

*Peleg v. Neiman Marcus Group, Inc.*,
204 Cal. App. 4th 1425 (2012) .......... 5, 6, 7, 8

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) .......... 6, 7

*Ruiz v. Moss Bros. Auto Grp., Inc.*,
232 Cal. App. 4th 836 (2014) .......... 10

*S.G. v. Epic Games, Inc.*,
796 F. Supp. 3d 614 (N.D. Cal. 2025) .......... 13

*SCPS LLC v. Kind L.*,
2026 WL 96898 (C.D. Cal. Jan. 8, 2026) .......... 6

*Taft v. Henley Enters., Inc.*,
2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) .......... 2, 9

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018) .......... 7-8

*Trudeau v. Google LLC*,
816 Fed. App'x 68 (9th Cir. 2020) .......... 5, 6

*Waggoner v. Panera, LLC*,
2025 WL 2377072 (C.D. Cal. May 20, 2025) (Staton, J.) .......... 8, 11

*Wray v. Humble Bundle, Inc.*,
824 F. Supp. 3d 868 (N.D. Cal. 2025) .......... 9

**Other Authorities**

Fed. R. Civ. P. 56 .......... 9, 11

## INTRODUCTION

This Court must compel Plaintiffs to arbitrate their claims. Plaintiffs were notified of and assented to the relevant TOS, each of which included an arbitration agreement that no Plaintiff opted out of. Notably, Plaintiffs do not dispute that: (i) the emails and pop-up advisals shown to Plaintiffs Gonzales, Newton, Taylor, and J.T. concerning the January 2025 and/or February 2026 TOS[1] updates provided adequate notice of those updates or that clicks on the advisals manifested assent; (ii) the account-creation screen Plaintiff Cabonios encountered in April 2025 notified him he was agreeing to Crunchyroll's January 2025 TOS and that clicking the "CREATE ACCOUNT" button manifested assent; (iii) no Plaintiff opted out of the arbitration agreement in any version of Crunchyroll's TOS; (iv) Plaintiff J.T. cannot disaffirm her agreement with Crunchyroll; (v) the delegation clause in the relevant TOS is clear and unmistakable; or (vi) even if the Court addresses arbitrability, all versions of the arbitration agreement cover Plaintiffs' VPPA claims.

Instead, Plaintiffs' Consolidated Opposition to Crunchyroll's Motion to Compel Arbitration and Motion to Transfer ("Opposition") raises several meritless distractions. The Opposition argues, for example, the 2025 and 2026 TOS updates were improper unilateral modifications. But those updates were accompanied by notice, assent, and an opt-out right—all of which mark a bilateral, not unilateral, agreement. That some Plaintiffs' claims may have already accrued does not dictate a different result. A company is not foreclosed from updating its terms through a bilateral agreement simply because it knows someone, somewhere may have some claim against it. Plaintiffs also try to avoid arbitration by arguing that the delegation clause in the January 2025 arbitration agreement is unconscionable. But the opt-out right Crunchyroll provided in that agreement (which no Plaintiff invoked) forecloses any such attack, which fails for

[1] All capitalized terms have the meaning assigned in Crunchyroll's opening briefs unless otherwise stated. *See* ECF 30 ("MTCA Br."), ECF 31 ("MTT Br.").

other reasons too. Finally, the Opposition manufactures an imaginary evidentiary standard for assent—that only direct and incontrovertible evidence akin to a live video recording showing that each Plaintiff clicked the relevant buttons suffices. That is not the law, and courts routinely credit evidence, like Crunchyroll's, that identifies how notices and screens appeared to account users at points in time.

The Court should compel all Plaintiffs to arbitrate their claims.

## ADDITIONAL BACKGROUND

Crunchyroll's opening brief supplies the background required to resolve Crunchyroll's motion. Crunchyroll supplements that discussion to correct material misstatements and omissions in Plaintiffs' Opposition.

### I. No Original Plaintiff Notified Crunchyroll of their VPPA Claim Before Suing Crunchyroll.

Plaintiffs' arguments against arbitration are legally meritless, as discussed below. But one of their central arguments also rests on the false premise that Crunchyroll knew of Plaintiffs Cabonios, J.T., Gonzales, Newton, and Taylor's (the "Original Plaintiffs") VPPA claims before the January 2025 TOS update. *See* Opp'n at 3 ("Plaintiffs . . . sent written notice to Crunchyroll concerning [alleged VPPA violations] on January 15, 2025"). In fact, that notice stated it was on behalf of identified "Claimants," none of whom included the Original Plaintiffs. *See* Decl. of Sudhir V. Rao ("Rao Decl."), Ex. 1 at 1, ¶¶ 2-4. Indeed, Plaintiff Cabonios could not have been among the January 15 Claimants because he created his Crunchyroll account in April 2025. *See* Decl. of Samir Ahmed, ECF 30-1 ("Ahmed Decl.") ¶ 16.[2]

Precisely because the Original Plaintiffs were not among the January 15 Claimants, Crunchyroll requested their email addresses at this case's outset to identify

[2] Plaintiff Cabonios's assertion that he "do[es] not recall the exact date on which [he] created" his Crunchyroll account does nothing to rebut Crunchyroll's evidence. *See, e.g.*, *Taft v. Henley Enters., Inc.*, 2016 WL 9448485, at *4 (C.D. Cal. Mar. 2, 2016)

and preserve their Crunchyroll accounts. *See* Rao Decl. ¶ 5. Although Plaintiffs claim Crunchyroll needed to do more in its opening papers to "establish[] how the account-level events on which it relies are attributable to the particular Plaintiffs" (Opp'n at 2), they ignore that (i) Crunchyroll requested "any email address(es) they [*i.e.* the Original Plaintiffs] may have used to interact with [Crunchyroll]" (Rao Decl. ¶ 6) and (ii) the Original Plaintiffs, through their counsel, provided those addresses without qualification, except to note that the address associated with J.T. was her father's (*see id.* ¶¶ 7-8, Ex. 2).

Plaintiff Castaneda, who was joined only in the First Amended Complaint ("FAC"), was among the January 15 claimants. *See id.* ¶ 4. But that fact requires arbitration of his claim. The January 15 notice stated that "Claimants intend to initiate individual arbitrations before the American Arbitration Association." *Id.*, Ex. 1 at 2. In expressing that intention, Plaintiff Castaneda conceded he had agreed to arbitrate his VPPA dispute with Crunchyroll under the then-operative TOS and never opted out of that arbitration agreement, which he had the right to do. *See* Decl. of Oliver Kiefer, Ex. 4, ECF 30-15, § 14; Ahmed Decl. ¶ 61.

## II. The Ahmed Declaration's Exhibits Reflect the Email Notices and Advisals as They Were Sent and Displayed at the Relevant Time.

The Ahmed Declaration laid the foundation for Mr. Ahmed's statements about Plaintiffs' Crunchyroll accounts and activity on Crunchyroll. In attacking the declaration as "suppl[ying] conclusions without an adequate foundation connecting the alleged electronic acts to the particular Plaintiffs" (Opp'n at 12), Plaintiffs ignore several elements of the declaration. They pay short shrift to Mr. Ahmed's role as the head of engineering for Crunchyroll, through which he is "familiar with Crunchyroll's systems and records concerning, among other things, user accounts with Crunchyroll,

---

(plaintiff's assertion that "she does not remember signing the [arbitration] agreement . . . without more . . . fails to adequately rebut Defendant's evidence").

Crunchyroll's account sign-up flow, updates to Crunchyroll's Terms of Service ('TOS'), the processes by which users are notified of and agree to such updates, and whether users have opted out of Crunchyroll's arbitration agreement." Ahmed Decl. ¶ 1. And they ignore that he "reviewed Crunchyroll's business records associated with each Plaintiff's Crunchyroll account," records Crunchyroll maintains "in the ordinary course of business" and, per Crunchyroll's regular practice, are created or maintained "at or near the time of the acts, events, or transactions the records reflect." *Id.* ¶ 3. Those are exactly the types of records that would have allowed Mr. Ahmed to determine what notices a Plaintiff would have received or what screens they would have seen.

Exhibit C to the Ahmed Declaration also accurately depicts the email notice sent to Plaintiffs Gonzales, Newton, Taylor, and J.T. concerning the January 2025 TOS update. Plaintiffs complain that Exhibit C "is not addressed to any Plaintiff and bears a 2026 footer." Opp'n at 12. But that is simply because Crunchyroll, in 2026, generated an instance of the email concerning the January 2025 TOS update to be able to attach it as an exhibit to the Ahmed Declaration. *See* Supplemental Decl. of Samir Ahmed ¶ 5. Tellingly, no Plaintiff denies that they received notice of the January 2025 TOS update, that the email in Exhibit C linked to the January 2025 TOS, as Mr. Ahmed declared (*see* Ahmed Decl. ¶ 24), or that they agreed to that update.

## ARGUMENT

### I. The Court Must Compel Plaintiffs to Arbitrate Their Claims.

Crunchyroll detailed how Plaintiffs knew of and assented to the arbitration agreement in Crunchyroll's TOS. *See* MTCA Br., Arg. § I.A. Plaintiffs respond with a grab-bag of distractions this Court can easily dispatch.

A. Crunchyroll Did Not Unilaterally Modify Its TOS: The Original Plaintiffs and Crunchyroll Bilaterally Agreed to the Operative TOS.

The Original Plaintiffs rely heavily on *Peleg v. Neiman Marcus Group, Inc.* to try to escape arbitration. 204 Cal. App. 4th 1425, 1465 (2012). That decision does not apply for several reasons.

Primarily, *Peleg* governs only unilateral contractual modifications, whereas the Original Plaintiffs accepted the 2025 and 2026 TOS through a bilateral agreement. *Peleg* observed that, under California law, a provision that expressly permits an employer to unilaterally modify an arbitration agreement and apply it to an already accrued or known claim is illusory; meanwhile, a unilateral modification provision that is silent on whether unilateral modifications govern known or accrued claims must be gap-filled by the implied covenant of good faith and fair dealing to prevent unilateral modifications from reaching such claims. *See id.* In either event, *Peleg* governs only unilateral modifications.

Agreements accompanied by notice and assent, however, are bilateral, not unilateral. *Trudeau v. Google LLC*, 816 Fed. App'x 68 (9th Cir. 2020) illustrates the point. There, although the modification provision in an earlier agreement between Google and its advertising customers "gave Google the right to unilaterally modify the terms of service by posting new terms online, without first seeking its counterparties' affirmative acceptance of such terms," the Ninth Circuit held that the relevant agreement was "not enacted through [that] mechanism" because Google instead "gave Mr. Trudeau notice of the new terms and he affirmatively accepted them." *Id.* at 70. The Ninth Circuit also upheld the new arbitration agreement's application to claims "that had already accrued at the time of the adoption of the arbitration agreement" because the new agreement unambiguously encompassed "claims that arose before Customer or Advertiser first accepted any version of these Terms containing an arbitration provision." *Id.* The Court held that parties can bilaterally agree to have an arbitration agreement govern previously accrued or known claims without violating California law,

exactly as happened here. *See id.*; *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025) ("[T]hough the Second Visitor Agreement became effective after Pilon provided notice of the accrual of his claim, it was the parties, rather than Discovery alone, that effectuated that agreement. New York's (or even California's) implied covenant of good faith and fair dealing does not prevent parties from mutually modifying their contracts in such a way."); *Azeveda v. Comcast Cable Commc'ns LLC*, 2019 WL 5102607, at *6 (N.D. Cal. Oct. 11, 2019) ("[B]y its plain terms, the 2015 Program applies to claims accrued prior to its enactment and covers the claims asserted herein."). Ample authority confirms that modifications accompanied by notice and assent are not unilateral, especially if the counterparty may reject the modification.[3]

Here, the January 2025 and February 2026 TOS resulted from bilateral agreement because they were accompanied by notice and assent. *See* MTCA Br. Arg. § I.A. Beyond that, both versions gave users 30 days to opt out of the arbitration agreement; that right forecloses Plaintiffs' "unilateral" modification theory. *See supra* n.3. Plaintiffs' only response is to argue that Crunchyroll's evidence establishes account-level, not Plaintiff-specific, assent. But that argument fails for the reasons described *infra* and, regardless, does not negate the notice and an opt-out right provided here.

*Peleg* is also distinguishable because Crunchyroll did not know of the Original Plaintiffs' VPPA claims at the time of the January 2025 TOS update. *Contra* Opp'n at 8 ("Crunchyroll knew of Plaintiffs' VPPA dispute before the January 28 substantive

---

[3] *See SCPS LLC v. Kind L.*, 2026 WL 96898, at *9 (C.D. Cal. Jan. 8, 2026) (no unilateral modification when users "were provided notice of the modifications and assented to the terms," even though "there was no opportunity to opt out"; going on to enforce terms that were modified after plaintiff sent a notice of dispute); *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 232 (2019) (no unilateral modification of arbitration agreement when plaintiff "agreed to the terms of the Agreement"; enforcing modified arbitration agreement as to claim that was filed before the modification); *Azeveda*, 2019 WL 5102607, at *6 n.5 (no unilateral amendment when "Defendants notified employees of the proposed changes and allowed them a reasonable opportunity to opt-out of the changes").

rewrite."). None of those Plaintiffs were among the claimants referenced in Mr. Abiri's January 15, 2025 notice to Crunchyroll. Even if Plaintiffs' claims accrued before the January 2025 TOS update, courts routinely apply a bilaterally modified arbitration agreement to previously accrued claims, as discussed. Although Plaintiffs cite *Avery v. Integrated Healthcare Holdings, Inc.* for the proposition that claims "remain governed by the arbitration agreement existing at accrual" (Opp'n at 9), the *Avery* court made that observation in discussing unilateral modifications. 218 Cal. App. 4th 50, 61-62 (2013). That makes sense. Otherwise, any company would be foreclosed from updating its Terms of Service in perpetuity—or at least until the relevant statute of limitations period ran—once it became aware that some person might assert a claim against the company. That is not the law.

Finally, *Peleg* arose in the employment context, and many courts have limited it to that context. *See, e.g.*, *Pilon*, 769 F. Supp. 3d at 297 ("[N]ot even California law . . . renders retroactive arbitration provisions in consumer contracts unconscionable.") (emphasis added). That limitation makes sense, given that *Peleg*'s core concern was preventing employers from "interfer[ing] with the employee's expectations regarding how the agreement applied to those claims"—a concern inapplicable here. *Avery*, 218 Cal. App. 4th at 61 (citing *Peleg*).

Although the centerpiece of Plaintiffs' argument, *Peleg* is a square peg in a round hole on these facts.

B. Plaintiffs' "Challenge" to the Delegation Clause Fails.

Plaintiffs' seeming unconscionability challenge to the delegation clause in the January 2025 TOS (Opp'n at 9-11) also fails. The simplest reason is that Plaintiffs could have opted out of the entire arbitration agreement in the January 2025 TOS. That opt-out right prevents Plaintiffs from establishing procedural unconscionability, an essential element of unconscionability under California law. Here, as in *Trudeau*, Plaintiffs do "not meaningfully dispute the voluntariness of the opt out procedure. Thus, the arbitration provision is not procedurally unconscionable and thus not unconscionable."

*Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020). That ends the matter. *See also Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (no procedural unconscionability when 30-day right to opt-out of arbitration agreement gave plaintiff "ample opportunity to investigate any provisions he did not understand before deciding whether to opt out of [defendant's] arbitration program"); *cf. Waggoner v. Panera, LLC*, 2025 WL 2377072, at *7-8 (C.D. Cal. May 20, 2025) (Staton, J.) (rejecting unconscionability challenge to arbitration agreement based solely on absence of procedural unconscionability).

Regardless, when distilled, Plaintiffs' delegation challenge repackages Plaintiffs' misguided argument under *Peleg*. *See* Opp'n 10-11. That argument fails for the reasons discussed. It is also self-defeating procedurally. Plaintiffs correctly note that, under *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022), this Court must first address whether a contract was formed, and, if so, resolve any specific challenge to the delegation clause. Opp'n at 11. If the Court concludes, as it should, that the Original Plaintiffs agreed to arbitrate under the January 2025 TOS, it will have rejected Plaintiffs' *Peleg* challenge. Plaintiffs identify no reason, because they cannot, that such a challenge would fare any better as to the delegation clause specifically. To the extent Plaintiffs argue that the delegation clause is unconscionable because it delegates issues such as voidability, validity, and enforceability—all of which are distinct from contract <u>formation</u>—courts routinely enforce similar delegation clauses. *See, e.g.*, *In re StockX Customer Data Sec. Breach Litig.,* 19 F.4th 873, 883, 885-86 (6th Cir. 2021) (plaintiffs' infancy defense was "for an arbitrator to decide," given that defense "affects the validity or enforceability of the whole contract" and "does not concern the formation or existence of a contract") (citation modified).

Plaintiffs' citation to *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025) does not move the needle. The alleged retroactivity of the unilateral modification provision was only one of multiple defects in the challenged procedures. Beyond that, the *Heckman* plaintiffs lacked a right to opt-

out of the arbitration agreement, and they could only access previously purchased tickets by visiting Ticketmaster's website, an act that the challenged terms stated would constitute assent. *Id.* at 683. Here, however, the Original Plaintiffs, who each received notice of the January 2025 TOS update, could have opted out of the arbitration agreement within 30 days without further engaging with Crunchyroll or stopping using Crunchyroll's services. Those facts, among many others, render *Heckman* inapposite. *See Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868, 878 (N.D. Cal. 2025) (rejecting procedural unconscionability challenge based on opt-out right and distinguishing *Heckman* because "[n]o such opportunity was available to users" there).

Plaintiffs' challenge to the delegation clause fails.

C. Crunchyroll Established Assent.

The Opposition next tries to overcome Plaintiffs' failure to submit evidence to create a genuine factual dispute in response to Crunchyroll's competent evidence of assent by manufacturing an artificial standard for assent and arguing that Crunchyroll did not meet that standard. *See* Opp'n § IV.B.

***Plaintiffs Cabonios, Gonzales, Newton, Taylor, and Castaneda Do Not Provide Evidence Contesting Assent.*** The FAA applies a Rule 56-type standard to disputes over formation, meaning once the movant carries its production burden, the nonmovant must produce evidence supporting its defense. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); *Taft*, 2016 WL 9448485, at *4.

Here, Crunchyroll carried its production burden through the Ahmed Declaration, which explains Mr. Ahmed's familiarity with Crunchyroll's account, TOS update, notice, assent, and opt-out systems, his review of ordinary-course business records, and the account-specific records showing the relevant notice, click, use, and opt-out facts. Ahmed Decl. ¶¶ 1-3. The Opposition's speculation that more granular records might exist does not create a genuine dispute—particularly for Plaintiffs Cabonios, Gonzales, Newton, Taylor, and Castaneda, none of whom submitted evidence disputing receipt, use, or assent. *See Taft*, 2016 WL 9448485, at

*4 (declaration vaguely stating the party resisting arbitration did not recall signing the arbitration agreement was insufficient to rebut evidence supporting the agreement); *see also French v. Roblox Corp.*, 2026 WL 2195890, at *6 (E.D. Pa. July 29, 2026) ("Plaintiff does not actually dispute [Plaintiff created an account]. Rather, Plaintiff contends Epic has not sufficiently proven who sat on the other side of the video game screen when clicking 'Accept.' That does not create a genuine dispute."); *Garcia v. Roblox Corp.*, 2026 WL 413636, at *3 & n.2 (C.D. Cal. Feb. 11, 2026) (granting motion to compel arbitration based on declaration that, like Crunchyroll's, was based on the declarant's personal knowledge and review of business records and did not include a "raw database" or "event logs" (Opp'n at 12), and rejecting evidentiary challenge to declaration).

Plaintiffs' cited cases do not change the result. *Espejo v. Southern California Permanente Medical Group*, *Fabian v. Renovate America, Inc.*, and *Ruiz v. Moss Bros. Auto Group, Inc.* each dealt with arbitration agreements created by electronic signatures and, in turn, evidentiary questions associated with the authenticity of such signatures. *See* Opp'n at 12-13. But arbitration agreements can be formed without a signature. *See Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *2 (9th Cir. Mar. 3, 2026). And here, Plaintiffs' subsequent use after receiving notice of the January 2025 TOS update and clicking advisal buttons shows their assent. *See* MTCA Br. at 18-20.

More fundamentally, the Opposition's cases are distinguishable because the parties resisting arbitration in those cases submitted ***evidence*** rebutting their purported agreement. *See Espejo*, 246 Cal. App. 4th 1047, 1054 (2016) (Espejo's declaration "stated he did not 'recall seeing or accessing the [document containing the arbitration agreement]'"); *Fabian*, 42 Cal. App. 5th 1062, 1065 (2019) (Fabian's declaration asserted "she did not sign the Contract physically or electronically, and what purports to be her electronic signature was 'placed' on the Contract without her consent, authorization, or knowledge."); *Ruiz*, 232 Cal. App. 4th 836, 840 (2014) (Ruiz's declaration "averred he did not recall signing any arbitration agreement"). By

contrast, Plaintiffs Cabonios, Gonzales, Newton, and Taylor submitted no evidence to rebut Crunchyroll's evidence showing that they agreed to the 2025 TOS.

The same is true for Plaintiff Castaneda and the 2019 TOS. While the Opposition suggests Crunchyroll did not make a "Castaneda-specific presentation" (Opp'n at 18), it submits no evidence that Castaneda did ***not*** see the advisal in Exhibit I. Castaneda himself pleads that he continued watching videos while logged into the App until September 2024 (FAC ¶ 11), and he submits no declaration denying that he encountered the advisal, clicked "Acknowledge," or continued using Crunchyroll afterward. Under the Rule 56-type formation standard, speculation that some hypothetical other records might exist does not create a genuine dispute, and Castaneda's continued use after notice is sufficient assent. *See Ireland-Gordy*, 2026 WL 594859, at *4; *see also* Ahmed Decl. ¶¶ 56-61 (describing Plaintiff Castaneda's agreement to the 2019 TOS).

For the same reason, this Court's *Waggoner* decision supports Crunchyroll's position. There, the party resisting arbitration submitted a declaration "attest[ing] that he 'never signed any arbitration agreement.'" 2025 WL 2377072, at *5. No Plaintiff submitted comparable evidence here, and legal argument devoid of evidence does not create a fact issue. *See Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015).

The Opposition's final argument regarding Plaintiffs Gonzales, Newton, and Taylor—that Crunchyroll did not "[p]rove" their agreement to the January 2025 Terms—fares no better. *See* Opp'n § IV.B.5. The 2025 TOS apply to those Plaintiffs because they received the January 2025 TOS and used the Crunchyroll App and independently clicked to confirm their assent. *See* MTCA Br., Arg. § I.A.2. Those Plaintiffs provide no evidence opposing Crunchyroll's evidence establishing assent, so they fail to create a factual dispute regarding assent, and their claims should be compelled to arbitration. *See French*, 2026 WL 2195890, at *6. The Supplemental

Declaration of Samir Ahmed, moreover, easily dispenses with Plaintiffs' argument regarding Exhibit C. *See* Suppl. Ahmed Decl. ¶¶ 5-6.

***Plaintiff Cabonios's Alleged Disaffirmance is for an Arbitrator to Decide.*** The Opposition also fails to create a genuine dispute that Cabonios formed an agreement with Crunchyroll. *See* Opp'n § IV.B.2. Crunchyroll's records show that, on April 25, 2025, Cabonios created the account associated with his email address, encountered the account-creation screen, could not proceed without clicking "CREATE ACCOUNT," clicked that button, did not opt out of arbitration, and watched approximately 44 hours of video content through that account. Ahmed Decl. ¶¶ 16-20. Plaintiff Cabonios does not deny any of that; he states only that he was seventeen in April 2025, recalls creating the account while a minor, stopped using Crunchyroll before turning eighteen, and now seeks to disaffirm any agreement he entered while under eighteen. Cabonios Decl. (ECF 32-1) ¶¶ 2-5.

The Opposition also argues that Plaintiff Cabonios's misrepresentation that he was "at least 18 years of age" when he registered presents an "interesting dilemma" for Crunchyroll because it "creates a legal hurdle" for formation. Opp'n at 17. Putting aside the irony of arguing that a party should <u>benefit</u> from affirmatively misrepresenting their age, Plaintiff Cabonios's misrepresentation only supports Crunchyroll's contention that disaffirmance is for an arbitrator to decide in the first place. Specifically, Plaintiff Cabonios's declaration ***confirms*** that he agreed to Crunchyroll's TOS: he admits that he created an account and does not deny that he assented to the TOS. The Opposition cites cases addressing the effectiveness of disaffirmance (Opp'n at 16), but that discussion is a red herring because whether Plaintiff Cabonios can disaffirm is a defense to enforcement that the arbitrator must address. *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022) ("As long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator.").

***J.T. Disclaims Disaffirmance.*** Notably, J.T. disclaims any disaffirmance defense; she argues only that Crunchyroll cannot prove whether she, her father, or someone else in the household clicked through the Roku prompts. *See* Opp'n § IV.B.3. J.T.'s position ignores the law. The relevant account was created using her father's email address, and he now confirms that he created the account, later used it to purchase a paid Crunchyroll subscription, and maintained the Roku device in the household living room for family use. Toruno Decl. (ECF 32-2) ¶¶ 3-5. If J.T. clicked through the prompt, she assented; if her father clicked through as the account holder and parent, she is bound through the same account relationship on which her VPPA claim depends. Courts have repeatedly compelled minors to arbitrate where the relevant account or device was created, maintained, or accepted by a parent. *See* MTCA Br. at 22 n.7 (citing *E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *3–4 (C.D. Cal. Feb. 6, 2026); *A.A. v. Roku, Inc.*, 2026 WL 1349064, at *3–4 (N.D. Cal. May 14, 2026); *S.G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621–22 (N.D. Cal. 2025)). The Opposition does not address those authorities, and its rule would require impossible proof—effectively a camera in the living room to identify which household member pressed "Continue"—before online terms could ever be enforced for shared accounts, or any accounts accessible by more than one person. The Court should reject that absurd result.

## CONCLUSION

The Court should grant Defendants' motion and compel Plaintiffs to arbitrate their claims and stay this case.

///

///

///

///

///

///

Respectfully submitted,

Dated: September 10, 2026

**ZWILLGEN LAW LLP**

By: /s/ *Oliver M. Kiefer*

Oliver M. Kiefer (SBN 332830)
oliver.kiefer@zwillgen.com
369 Pine Street Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

**ZWILLGEN PLLC**

Sudhir V. Rao (*pro hac vice* forthcoming)
Sudhir.rao@zwillgen.com
183 Madison Avenue, Suite 1601
New York, NY 10016
Telephone: (646) 362-5590

*Attorneys for Defendant Crunchyroll, LLC*

**LOCAL RULE 11-6 VERIFICATION**

The undersigned, counsel of record for Defendant Crunchyroll, LLC, certifies that this brief contains 4,187 words, which complies with the word limit of L.R. 11-6.1 and this Court's Initial Standing Order § 8.c (ECF 17).

Dated: September 10, 2026

ZWILLGEN LAW LLP

By: /s/ *Oliver M. Kiefer*

Oliver M. Kiefer (SBN 332830)

*Attorney for Defendant Crunchyroll, Inc.*