UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-02373-JLS-MAR Date: October 27, 2026
Title: Francisco Cabonios et al v. Crunchyroll, LLC

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Kelly Davis | N/A |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER (1) GRANTING MOTION TO COMPEL ARBITRATION (Doc. 30); (2) DENYING AS MOOT MOTION TO TRANSFER (Doc. 31); AND (3) STAYING PROCEEDINGS PENDING ARBITRATION**

Before the Court are a Motion to Compel Arbitration and a Motion to Transfer filed by Defendant Crunchyroll, LLC. (MTCA, Doc. 30; Transfer Mot., Doc. 31.) Plaintiffs Francisco Cabonios, J.T., Anthony Gonzales, Matthew Newton, Alicia Taylor, and Oscar Castaneda opposed, and Defendant replied. (Opp., Doc. 32; MTCA Reply, Doc. 33; Transfer Reply, Doc. 34.) The Court finds these matters appropriate for decision without oral argument, and the hearing set for October 30, 2026, at 10:30 a.m. is VACATED. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.[1] For the following reasons, the Court GRANTS Plaintiffs' Motion to Compel Arbitration, and DENIES AS MOOT Plaintiffs' Motion to Transfer.

## I. BACKGROUND

This is a putative class action filed by Plaintiffs Francisco Cabonios; J.T., by and through her guardian *ad litem* Oskar Toruno; Anthony Gonzales; Matthew Newton;

[1] Accordingly, Plaintiffs' application to appear remotely (Doc. 44) is DENIED as moot.

Alicia Taylor; and Oscar Castaneda. Plaintiffs are current or former subscribers to Defendant Crunchyroll, LLC ("Crunchyroll"), which is a streaming service that allows subscribers to watch anime videos and Asian dramas on its website and application. (First Amended Complaint ("FAC") ¶¶ 1, 6–11, 19, Doc. 29.) Crunchyroll requires users to create an account, providing their email address and a password, before they can watch videos. (*Id.* ¶ 21.) Plaintiffs allege that when they watched videos on Crunchyroll, Crunchyroll transmitted Plaintiffs' personal viewing information, including their email address, device identifier, and title of the video they were watching, to a third party without their consent. (*Id.* ¶¶ 32, 42.) Plaintiffs thus bring a claim against Crunchyroll for violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq.* (*Id.* ¶¶ 57–67.)

Crunchyroll moves to compel arbitration, or in the alternative, to transfer this action to the Southern District of New York. (MTCA; Transfer Mot.) Crunchyroll asserts that each Plaintiff agreed to Crunchyroll's Terms of Use. Since June 2, 2017, the Terms of Use have contained the following arbitration provision:

> [A]ll disputes arising out of, relating to, or in connection with these Terms or your use of the Services . . . . will be resolved through binding arbitration.

(Ahmed Decl. ¶ 8, Doc. 30-1; Ex. A to Ahmed Decl., February 2026 Terms at 17, Doc. 30-1.)[2] The Terms of Use also contained a provision allowing users to opt out of the arbitration agreement:

[2] Prior versions of Crunchyroll's Terms of Use contained nearly identical language with respect to arbitration. (*See* Ex. 3 to Kiefer Decl., January 28 2025 Terms at 9, Doc. 30-14 ("[A]ll disputes arising out of, relating to, or in connection with these Terms of Use or your use of the Site and/or Services [must] be formally resolved through binding arbitration); Ex. 2 to Kiefer Decl., January 22 2025 Terms at 8–9, Doc. 30-13 ("All disputes arising out of, relating to, or in connection with these Terms of Use or your use the Site/Services that cannot be resolved

> You can opt-out of the Arbitration Agreement and Class Action Waiver by notifying Crunchyroll in writing no later than thirty (30) days of your acceptance of any update to these Terms or your first use of the Service, whichever is later. . . . You must send your opt-out notice to one of the following physical or email addresses . . . .

(February 2026 Terms at 22–23.)[3]

Further, the Terms of Use delegated threshold issues of arbitrability to the arbitrator with the following provision:

> Except as set forth in Section 14(e), the arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Terms of Use and the Arbitration Agreement, including, but not limited to any claim that all or any part of these Terms of Use or the Arbitration Agreement are void or voidable, whether a claim is subject to arbitration, and any dispute regarding the payment of administrative or arbitrator fees

informally or in small claims court will be resolved through binding arbitration[.]”); Ex. 4 to Kiefer Decl., March 2019 Terms at 5, Doc. 30-15 (“All disputes arising out of, relating to, or in connection with these Terms of Use or your use of the Site and/or Services that cannot be resolved informally or in small claims court will be resolved through binding arbitration[.]”); Ex. 1 to Kiefer Decl., 2017 Terms at 4, Doc. 30-12 (“All disputes arising out of, relating to, or in connection with these Terms of Use or your use of the Site and/or Services that cannot be resolved informally or in small claims court will be resolved through binding arbitration[.]”).)

[3] Prior versions of Crunchyroll’s Terms of Use also allowed users to opt out. (*See, e.g.*, January 28 2025 Terms at 13.)

> (including the timing of such payments and remedies for nonpayment).

(January 28 2025 Terms at 10; *see also* February 2026 Terms at 19 (similar).)

Additionally, since January 28, 2025, the Terms of Use have also included a forum selection clause, stating that "any legal action relating to these Terms shall be the state and federal courts located in New York County, New York[.]" (Ahmed Decl. ¶¶ 10–11.)

## II. LEGAL STANDARD

Congress enacted the Federal Arbitration Act "in 1925 as a response to judicial hostility to arbitration." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012). The FAA provides that an agreement to arbitrate disputes arising from "a contract evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The "party seeking to compel arbitration has the burden under the FAA to show [these two elements]." *Ashbey v. Archstone Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds.* However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,

363 U.S. 574, 582 (1960)). Arbitration agreements may also "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In these analyses, a court may consider evidence outside of the pleadings, such as declarations and other documents filed with the court, using "a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004); *see also Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1104 n.1 (9th Cir. 2010) ("We take . . . facts from the First Amended Complaint, on file in the district court, and declarations filed in support of and in opposition to the motion to dismiss. All are part of our record.").

## III. ANALYSIS

### A. Plaintiffs Gonzales, Newton, Taylor, Castaneda, and J.T.

#### 1. Formation of an Agreement

The parties first dispute whether each Plaintiff assented to be bound by the Terms of Use, and the arbitration provision therein. Here, the Court considers whether Plaintiffs Gonzales, Newton, Taylor, Castaneda, and J.T. assented to be bound; it considers Plaintiff Cabonios's agreement in a separate analysis below.

The "threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.'" *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (quoting *Van Ness Townhouses v. Mar. Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)). "In California, general principles of contract law determine whether the

parties have entered a binding agreement to arbitrate." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015) (internal quotation marks and brackets omitted). "An essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001), *as modified* (Sept. 12, 2001). "A party seeking to compel arbitration 'bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence.'" *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 462 (2021) (internal citation omitted).

As an initial matter, Plaintiffs challenges the sufficiency of Crunchyroll's evidence of Plaintiffs' assent to the Terms of Use. To show that each Plaintiff assented to one or more versions of the Terms of Use, Crunchyroll submits the declaration of its head of engineering, Samir Ahmed. (Ahmed Decl.) Ahmed's declaration explains when each Plaintiff viewed and acknowledged the Terms of Use. However, Ahmed does not rely on specific event logs or signatures showing Plaintiffs' explicit assent to any agreement. Rather, based on Crunchyroll's records, Ahmed avers that Plaintiffs' specific accounts took certain actions, like purchasing subscriptions, on certain days, and that when Plaintiffs took those actions, Crunchyroll "would have required [them] to . . . accept Crunchyroll's then-operative TOS." (*See, e.g.*, *id.* ¶¶ 22, 36, 44, 50.) Ahmed further attaches as exhibits copies of the notices of the Terms of Use that the user would have seen. Plaintiffs argue that because Ahmed has not explained "the system and factual basis connecting the recorded event to the particular user," his attestations have no "adequate foundation connecting the alleged electronic acts to the particular Plaintiffs." (Opp. at 17.)

The Court disagrees with Plaintiffs, and finds that Ahmed has provided sufficient basis for his statements. Ahmed's assertions are based on Crunchyroll's records of actions taken by Plaintiffs' accounts, which Crunchyroll identified by their email addresses. (Rao Decl. ¶¶ 5–8, Doc. 33-2.) Ahmed then asserts that these actions would have involved exposure to the Terms of Use, relying on his knowledge of Crunchyroll's

"account sign-up flow, updates to Crunchyroll's Terms of Service ('TOS'), [and] the processes by which users are notified of and agree to such updates[.]" (Ahmed Decl. ¶ 1.) Ahmed's statements, which are specific about the time and form in which the Terms of Use would have been presented, are thus supported by his understanding of Crunchyroll's functionality at specific points in time. This is sufficient foundation. *Cf. Tagliabue v. J.C. Penney Corp., Inc.*, 2015 WL 8780577 (E.D. Cal. Dec. 15, 2015) (reasoning that, in the context of authenticating an electronic signature, an explanation of "new hire onboarding and current employee processes" and "steps [that] have to be completed" was relevant); *Taft v. Henley Enters., Inc.*, 2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) (Staton, J.) (similar). Moreover, no Plaintiff asserts that they did *not* see the Terms of Use at the time Ahmed avers they did. Thus, Ahmed's factual assertions are wholly uncontested. Accordingly, the Court finds that there is "no genuine issue of material fact" in the record related to the issue of formation of an agreement. *Concat,* 350 F. Supp. 2d at 804. It thus next considers whether Ahmed's uncontested assertions are sufficient to show that the parties did in fact form an agreement to arbitrate their claims.

a. **Plaintiffs Gonzales, Newton, and Taylor Agreed to the January 2025 Terms**

The statements within Ahmed's declaration are sufficient to show that Plaintiffs Gonzales, Newton, and Taylor agreed to the Terms of Use updated on January 28, 2025 (the "January 2025 Terms"), and therefore to the arbitration clause therein.

With respect to Gonzales, Ahmed asserts that Gonzales created an account on February 4, 2017.[4] (Ahmed Decl. ¶ 35.) On February 5, 2025, following the Terms of

[4] On June 20, 2024, Gonzales signed up for a free trial for a paid subscription, and would have been required to accept Crunchyroll's then-operative Terms of Use, which contained the

Use's January 2025 update, Gonzales received an email with the January 2025 Terms. (*Id.* ¶ 37.) Further, on March 22, 2025, Gonzales opened the Crunchyroll application, where a banner was displayed stating: "We've updated our Terms of Use for using Crunchyroll. Please review our updated terms. By continuing, you agree to the updated terms." (*Id.* ¶ 38; Ex. G to Ahmed Decl., Doc. 30-8.) Terms of Use was hyperlinked to the January 2025 Terms. (Ahmed Decl. ¶ 39.) Gonzales could not proceed to watch videos without clicking "Continue." (*Id.* ¶ 40.) He did so, and continued watching Crunchyroll videos. (*Id.* ¶¶ 40–41.)

As for Newton, Ahmed asserts that Newton created an account on March 10, 2022.[5] (*Id.* ¶ 43.) On February 5, 2025, following the Terms of Use's January 2025 update, Newton received an email with the January 2025 Terms. (*Id.* ¶ 45.) On April 12, 2025, he opened the Crunchyroll application, where the same banner as described above was displayed, which contained the same link to the January 2025 Terms. (*Id.* ¶ 46.) Like Gonzales, Newton could not proceed to watch videos without clicking "Continue." (*Id.*) He did so, and continued watching Crunchyroll videos. (*Id.* ¶ 47.)

Finally, Ahmed asserts that Taylor created an account on August 31, 2024.[6] (*Id.* ¶ 49.) On February 5, 2025, following the Terms of Use's January 2025 update, Taylor

arbitration provision. (Ahmed Decl. ¶ 36.) Thus, it appears that Gonzales also agreed to arbitrate under an earlier version of the Terms of Use.

[5] On June 5, 2023, Newton purchased a paid subscription to Crunchyroll, and would have been required to accept Crunchyroll's then-operative Terms of Use, which contained the arbitration provision. (Ahmed Decl. ¶ 44.) Thus, it appears that Newton also agreed to arbitrate under an earlier version of the Terms of Use.

[6] Taylor purchased a paid subscription on September 7, 2024, which would have been required to accept Crunchyroll's then-operative Terms of Use, which contained an arbitration provision. (*Id.* ¶ 50.) Thus, it appears that Taylor also agreed to arbitrate under an earlier version of the Terms of Use.

received an email with the January 2025 Terms. (*Id.* ¶ 51.) On March 7, 2025, she opened the Crunchyroll Roku TV application, and a screen was displayed that read, "We've updated our Terms of Use for using Crunchyroll. Please review our updated terms at https://www.crunchyroll.com/roku-tos. By continuing, you agree to the updated terms." (*Id.* ¶ 52; Ex. D to Ahmed Decl., Doc. 30-5.) Newton could not proceed past the screen without clicking "Continue." (Ahmed Decl. ¶ 53.) She did so, and continued watching Crunchyroll videos. (*Id.* ¶¶ 53–54.)

Aside from their challenge to the sufficiency of Ahmed's declaration, which for the reasons stated above is unavailing, Plaintiffs do not present any argument contesting that Gonzales, Newton, and Taylor agreed to the January 2025 Terms. Indeed, Plaintiffs appear to acknowledge that the screens presented to Gonzales, Newton, and Taylor, which provided them with notice of the updated Terms of Use and required them to affirmatively take action before they could continue to use Crunchyroll, were "properly presented clickwrap [that] can form a contract." (Opp. at 17.) Because Crunchyroll has shown that Gonzales, Newton, and Taylor all received "reasonably conspicuous notice" of the January 2025 Terms and clicked a button that "unambiguously manifest[ed] [their] assent to those terms," the Court concludes that Gonzales, Newton, and Taylor agreed to be bound by the January 2025 Terms. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

b. **Plaintiff Castaneda Agreed to the March 2019 Terms**

Crunchyroll has also shown that Plaintiff Castaneda agreed to the Terms of Use updated on March 14, 2019 (the "March 2019 Terms"), and therefore to the arbitration clause therein. Ahmed avers that Castaneda created a Crunchyroll account on January 12, 2016. (Ahmed Decl. ¶ 56.) In creating the account, he was required to provide his email address and password and click "Continue," and was informed, "By clicking 'Continue,' you agree to Crunchyroll's Terms of Service and Privacy Policy." (Ex. H to

Ahmed Decl., Doc. 30-9.) Beginning in January 2020, Castaneda was then shown a pop-up in the Crunchyroll application, which read as follows:

> **Terms of Use Updated**
> We have recently updated our Terms of Use that govern the use of our service. You can review the updated terms on the Crunchyroll website at crunchyroll.com/tos.
> **ACKNOWLEDGE**

(Ahmed Decl. ¶ 57; Ex. I to Ahmed Decl., Doc. 30-10.)

The underlined text and link led to a webpage with the March 2019 Terms, which included an arbitration provision. (Ahmed Decl. ¶ 58; March 2019 Terms.) Castaneda would have had to click "Acknowledge" in order to watch videos in the application, and Castaneda alleges that "he periodically watched videos while logged into Crunchyroll's app, until September 2024." (Ahmed Decl. ¶¶ 59–60; FAC ¶ 11.)

Plaintiffs first argue that Crunchyroll's evidence is not "Castaneda-specific" and is insufficient to prove that Castaneda encountered the screen. (Opp. at 23.) For reasons similar to those discussed above, the Court disagrees: Ahmed's statements and Plaintiffs' allegations show that Castaneda must have clicked "Acknowledge" before September 2024, and Castaneda does not aver that he did not see the screen or click "Acknowledge."

Plaintiffs next point out, without citing to any caselaw, that the screen Castaneda saw "does not state that clicking Acknowledge constitutes agreement to or acceptance of the updated terms." (*Id.*) However, courts routinely find that individualized notice of a service's updated Terms of Use, in combination with continued use of the service, is enough for notice and assent. *See, e.g.*, *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1201 (W.D. Wash. 2024) (stating that "courts have found notice of updated terms provided through email and followed by 'continued use' sufficient to show assent" and

collecting cases); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) ("[I]ndividualized notice [through email and notification on Facebook newsfeed] in combination with a user's continued use is enough for notice and assent."); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (finding that notice "followed by continued use is sufficient to establish assent" and noting that the plaintiff "could have immediately ended his contractual relationship with Disney instead of continuing to use the service"). Here, Castaneda received clear notice that the Terms of Use were being updated, as he could not proceed to use the application until he read the advisal and clicked "Acknowledge." He was also informed that the updated Terms of Use would "govern the use of our service," which he acknowledged and continued to use the service. This is sufficient to establish Castaneda's notice and assent to the March 2019 Terms.

### c. **Plaintiff J.T. Agreed to the February 2026 Terms**

Crunchyroll has further shown that Plaintiff J.T. agreed to the Terms of Use updated on February 2, 2026 ("February 2026 Terms"), and to the arbitration clause therein.

Plaintiff J.T. is a minor. (FAC ¶ 7.) Her Crunchyroll account was created in July 2020, using an email address she avers belongs to her father. (Ahmed Decl. ¶ 21.)[7] On February 2, 2026, Crunchyroll sent an email to the email address on file, titled "Update on Pricing and Terms of Service," with information about the updated February 2026 Terms. (*Id.* ¶ 28; Ex. E to Ahmed Decl., Doc. 30-6.) On April 10, 2026, J.T.'s

[7] J.T's account purchased a paid subscription on May 28, 2023, which would have been required to accept Crunchyroll's then-operative Terms of Use, which contained an arbitration provision. (Ahmed Decl. ¶ 22.) J.T. also reviewed and accepted the January 2025 Terms on March 7, 2025. (*Id.* ¶¶ 25–27.) Thus, it appears that J.T. also agreed to arbitrate under earlier versions of the Terms of Use.

household Roku TV application was opened, and the following advisal was displayed: "We've updated our Terms of Use for using Crunchyroll. Please review our updated terms at https://www.crunchyroll.com/roku-tos. By continuing, you agree to the updated terms." (*Id.* ¶ 30; Ex. F to Ahmed Decl, Doc. 30-7.) The link led to a webpage with the February 2026 Terms. (Ahmed Decl. ¶ 31.) The account user could not proceed past the screen without clicking "Continue." (*Id.* ¶ 32.) The account user did so, and last watched a video on Crunchyroll on May 26, 2026. (*Id.* ¶¶ 32–33.)

Plaintiffs emphasize that J.T. was a minor at the time the account was created, that "[t]he account was created by her father," and that "J.T. does not have access to her father's email account, nor did she pay for the subscription." (Opp. at 11.) Plaintiffs further state that the Roku device is a shared household device, and argue that Crunchyroll has not established that it was J.T. herself who viewed and consented to the February 2026 Terms on the Roku device. (*Id.* at 22.)

However, even assuming that it was J.T.'s father, not J.T., who received notice of the February 2026 Terms via email and on the Roku application, J.T. is still bound by the assent manifested by the account. "Under California law, a non-signatory can be compelled to arbitrate 'where a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim.'" *A. A. v. Roku, Inc.*, 2026 WL 1349064, at *3 (N.D. Cal. May 14, 2026) (quoting *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1070 (2008)). "One such example of a preexisting relationship is a parent-child relationship." *Id.* "[C]ourts have compelled the child to arbitrate particularly where the parent entered the agreement at least in part for the child's benefit." *S. G. v. Epic Games, Inc.*, 796 F. Supp. 3d 614, 621 (N.D. Cal. 2025); *see also Garcia v. Roblox Corp.*, 2026 WL 413636, at *6 (C.D. Cal. Feb. 11, 2026) ("[M]any other district courts in the Circuit . . . have found—for equitable

reasons—a minor child to be bound by an arbitration agreement entered into by their parents—particularly when it pertains to the subject matter of their claims.").

Here, although J.T.'s father Oskar Toruno submits a declaration averring that he purchased the paid Crunchyroll subscription in 2023, the FAC names J.T. herself as the person who became the subscriber in 2023. (Toruno Decl. ¶ 4, Doc. 32-2; FAC ¶ 7.) J.T. further alleges that she "periodically watched videos" on Crunchyroll, and that her personal viewing information was disclosed to the third-party without her consent (FAC ¶ 7); meanwhile, Toruno does not aver that he or any other member of his family watched videos using the subscription. The record therefore suggests that Toruno purchased the subscription for J.T.'s benefit and use. Thus, to the extent Toruno, not J.T., assented to the February 2026 Terms for the Crunchyroll account in question, his assent enabled J.T.'s continued use of the account. *See E.A.R.R. v. Roku, Inc.*, 2026 WL 369238, at *4 (C.D. Cal. Feb. 6, 2026) ("[The Plaintiffs' guardian's] conduct in creating the Roku account and making the Roku devices available in Plaintiffs' household leads to the presumption that this conduct 'was, at least in part, to benefit' Plaintiffs."). Accordingly, the Court finds that, even if J.T. herself did not agree to the February 2026 Terms, it would be equitable to hold her to the contractual obligations, including arbitration, that her father entered into on her behalf. "If the law were otherwise, individuals could avoid contractual obligations governing the use of online accounts 'simply by having third parties create accounts and then using them as the Plaintiff did,' even when the third parties maintained the accounts with the knowledge and expectation that the plaintiff would use them." *S. G.*, 796 F. Supp. 3d at 621 (citation omitted).

**2. Enforceability of the Agreements**

For the reasons stated above, Plaintiffs Gonzales, Newton, and Taylor agreed to the January 2025 Terms; Plaintiff Castaneda agreed to the March 2019 Terms; and

Plaintiff J.T. agreed to the February 2026 Terms. All these Terms of Use contained arbitration provisions.

Plaintiffs challenge only Crunchyroll's attempt to update the Terms of Use in January 2025 as impermissible "[t]o the extent Crunchyroll relies on its preexisting unilateral amendment mechanism" (Opp. at 13); they do not challenge the enforceability of the March 2019 Terms. Accordingly, Castaneda's claim must be compelled to arbitration.

Turning to Plaintiffs' challenge to Crunchyroll's January 2025 update to its Terms of Use, the Court next addresses whether it can enforce Gonzales, Newton, Taylor, and J.T.'s agreements to arbitrate the present dispute under the January 2025 and February 2026 Terms. As a threshold matter, Crunchyroll points out that challenges to the enforceability of arbitration provisions have been delegated to the arbitrator. "The presence of a delegation clause . . . limits the issues that a court may decide." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). However, before the Court can delegate such issues to the arbitrator, it first must "resolve any challenge directed specifically to the enforceability of the delegation clause[.]" *Id.* at 1030. Thus, the Court next addresses Plaintiffs' challenge to the delegation clause in the January 2025 Terms and February 2026 Terms.

Plaintiffs argue that the delegation clause should not be enforced because "Crunchyroll added it only after receiving notice of the VPPA dispute, simultaneously with language purporting to make the revised dispute-resolution regime apply to claims that had already 'arose' or 'were asserted.'" (Opp. at 15.) Citing to *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012), Plaintiffs argue that Crunchyroll's January 2025 modification to its Terms of Use "'manipulate[d] the arbitration process' in light of a particular existing dispute." (Opp. at 15.)

Plaintiffs' challenge to the delegation clause fails. Importantly, Crunchyroll's January 2025 modification to the Terms of Use was not unilateral, which was the *Peleg* court's concern. *See Peleg*, 204 Cal. App. 4th at 1464 (discussing the significance of "an employer's unilateral right to modify an arbitration agreement"). Rather, as discussed above, Plaintiffs Gonzales, Newton, Taylor, and J.T. were presented with the Terms of Use, and they each affirmatively took an action indicating their assent to the Terms of Use. Moreover, Gonzales, Newton, Taylor, and J.T. could have, but did not, opt out of the arbitration agreement within 30 days of acceptance of the Terms of Use. (Ahmed Decl. ¶¶ 34, 42, 48, 55.) The Court sees no issue with the parties entering into a bilateral agreement to arbitrate certain claims and delegate the arbitrability of those claims to the arbitrator, even where the claims the parties chose to send to arbitration included those already accrued. *See Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 232 (2019) (rejecting the argument that the arbitration agreement signed after the complaint was filed could not apply to the claims in the complaint, because "[t]he instant case does not involve a unilateral modification of an arbitration agreement. There is no dispute plaintiff agreed to the terms of the Agreement."); *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018) (concluding that an arbitration provision was "not procedurally unconscionable and thus not unconscionable" because there was "a meaningful opportunity to opt out of the arbitration provision"), *aff'd,* 816 F. App'x 68 (9th Cir. 2020). Plaintiffs have thus failed to show that the delegation clause in January 2025 Terms and February 2026 Terms is unenforceable.

Accordingly, Plaintiffs' remaining challenges to the enforceability of the January 2025 Terms and February 2026 Terms must be decided by the arbitrator pursuant to the Terms' valid delegation provisions. *See Caremark*, 43 F.4th at 1030 ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.").

**3. Conclusion as to Plaintiffs Gonzales, Newton, Taylor, Castaneda, and J.T.**

For the reasons stated above, Plaintiffs Gonzales, Newton, and Taylor agreed to the January 2025 Terms, Plaintiff Castaneda agreed to the March 2019 Terms, and Plaintiff J.T. agreed to the February 2026 Terms. All these Terms of Use contained arbitration provisions. Plaintiffs do not challenge the March 2019 Terms' arbitration provision as unenforceable, and any challenges to the January 2025 Terms and February 2026 Terms' arbitration provisions' enforceability must be delegated to the arbitrator pursuant to the Terms' enforceability delegation clauses. Thus, Crunchyroll's motion to compel arbitration is GRANTED as to Gonzales, Newton, Taylor, Castaneda, and J.T.[8]

**B. Plaintiff Cabonios Agreed to the 2025 Terms, and His Disaffirmance Defense Must Be Decided by the Arbitrator**

Lastly, the Court finds that Plaintiff Cabonios must also be compelled to arbitration.

Crunchyroll provides evidence that Cabonios created his account on April 25, 2025. (Ahmed Decl. ¶ 16.) In creating his account, he was required to enter his email address and a password, click a "Create Account" button. (Ex. B to Ahmed Decl., Doc. 30-3.) Under the "Create Account" button, Crunchyroll informed Cabonios: "By creating an account you're agreeing to our Terms of Use & Privacy Policy, and you confirm that you are at least 18 years of age." (*Id.*) "Terms of Use" was hyperlinked to the January 2025 Terms, which included an arbitration provision. (Ahmed Decl. ¶ 18.) Plaintiffs do not dispute that the notice of the Terms of Use was reasonably conspicuous, or that Cabonios unambiguously manifested his assent by clicking "Create Account," in this

[8] Crunchyroll's alternative motion to transfer as to these Plaintiffs is thus DENIED as moot.

relatively typical sign-in wrap agreement. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014–21 (9th Cir. 2024) (discussing notice and assent in sign-in wrap agreements).

Rather, Plaintiffs point out that Cabonios was 17 years old on April 25, 2025, and that he last watched a video on Crunchyroll on June 12, 2025, which was before he turned 18 years old. (Opp. at 21.) Cabonios has submitted a declaration expressly disaffirming any agreement with Crunchyroll formed before he was 18 years old, including "any agreement to arbitrate and any delegation provision[.]" (Cabonios Decl. ¶ 5, Doc. 32-1.) Plaintiffs thus argue that "[t]o the extent Cabonios accepted the [January 2025 Terms]," the agreement is now unenforceable due to his subsequent disaffirmance. (Opp. at 21.)

"California law provides that a minor has the capacity to contract, with the exception of certain contracts specifically prohibited by statute, and subject to the power of disaffirmance." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1035 (N.D. Cal. 2020) (citing Cal. Family Code § 6700). "The disaffirmance statute reflects a policy of 'shield[ing] minors from their lack of judgment and experience and confer[ring] upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people.'" *Id.* (quoting *Sparks v. Sparks*, 101 Cal.App.2d 129, 137 (1950)). "No specific language is required to communicate an intent to disaffirm," and a "declaration disclosing an unequivocal intent" to disaffirm a contract may be sufficient. *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007).

Crunchyroll argues that the effect of disaffirmance is a contract defense to enforceability for the arbitrator to decide under January 2025 Terms' delegation provision. (Reply at 16.) The Court agrees.

First, the parties appear to agree that a minor's disaffirmance is a defense to the enforceability of an agreement. *See J.R. v. Elec. Arts Inc.*, 98 Cal. App. 5th 1107, 1117 (2024) (characterizing disaffirmance as a defense); *I.B. by & through Fife v. Facebook, Inc.*, 2013 WL 6734239, at *4 (N.D. Cal. Dec. 20, 2013) (deeming disaffirmance the "infancy defense"). Further, the Court acknowledges that the January 2025 Terms contain a delegation provision which delegates "all disputes arising out of or relating to the . . . enforceability . . . of the Terms of Use and the Arbitration Agreement" to the arbitrator. (January 28 2025 Terms at 10.) The Court thus must delegate the dispute, including the disaffirmance defense, to the arbitrator, unless Cabonios has raised a "challenge directed specifically to the enforceability of the delegation clause[.]" *Caremark*, 43 F.4th at 1030.

Cabonios has raised no such specific challenge. In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court clarified courts' ability to decide issues of contract validity in the face of a delegation clause. 561 U.S. 63 (2010). The Supreme Court distinguished between "two types of validity challenges under [9 U.S.C. § 2]: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole[.]'" *Id.* at 69 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). Based on language in § 2 deeming an arbitration provision "'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained," the Supreme Court held that "a party's challenge to . . . the contract as a whole, does not prevent a court from enforcing" a delegation provision, but that "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement[.]" *Id.* at 70. The Supreme Court reasoned that because the challenge in question "opposed the motion to compel on the ground that the entire arbitration agreement, including the delegation clause, was unconscionable," it was a challenge to "only the validity of the contract as a whole." *Id.* at 72–73.

Here, like in *Rent-A-Center*, Cabonios's disaffirmance defense is directed to the validity of the January 2025 Terms as a whole, rather than to the validity of the delegation clause specifically. Cabonios expressly states that he disaffirms "any Terms of Service or other agreement with Crunchyroll" made "while [he] was under 18 years old[.]" (Cabonios Decl. ¶ 5.) It is immaterial that he states that his "disaffirmance includes any agreement to arbitrate and any delegation provision contained in these terms" (*id.*); any challenge to the validity of an agreement as a whole can also be framed to encompass the arbitration provision within the agreement, but this does not transform such a challenge into one contesting "specifically the validity of the agreement to arbitrate." *See Rent-A-Center*, 561 U.S. at 71 (reasoning that, as in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967), "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene"). Indeed, as a defense intended to protect minors from their own "improvidence," the disaffirmance defense is by nature not specific to any provision within a contract, but rather "rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012). Under *Rent-A-Center*, the Court cannot consider such a defense, and it must be decided by the arbitrator. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 884 (6th Cir. 2021) ("Plaintiffs' infancy defense falls in the second category because that defense directly affects the enforceability or validity of the entire agreement. . . . Thus, an arbitrator must adjudicate plaintiffs' infancy defense."); *see also S.T.G. by & through Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1208–12 (S.D. Cal. 2024).[9] Thus, Crunchyroll's motion to compel arbitration is GRANTED as to Cabonios.[10]

[9] To the extent Cabonios raises the same challenges to the January 2025 Terms as Gonzales, Newton, Taylor, and J.T, those challenges must also be delegated to the arbitrator pursuant to the delegation provision.

[10] Crunchyroll's alternative motion to transfer as to Cabonios is thus DENIED as moot.

## IV. CONCLUSION

For the above reasons, Plaintiffs' Motion to Compel Arbitration is GRANTED. These proceedings are STAYED pending arbitration. The parties are ORDERED to file a joint status report at the earlier of six months from the date of this Order or within **ten (10) days** of completion of the arbitration proceedings.

Plaintiffs' Motion to Transfer is DENIED as moot.

Initials of Deputy Clerk: kd